**KANSAS CITY SOUTHERN RAILWAY COMPANY, a corporation, Appellant,**

v.

**James H. CAGLE, Appellee.**

**No. 5203.**

United States Court of Appeals Tenth Circuit.

Dec. 27, 1955.

Rehearing Denied Feb. 2, 1956.

Writ of Certiorari Denied April 23, 1956.

See 76 S.Ct. 697.

Inc., 296 U.S. 521, 56 S.Ct. 340, 80 L.Ed. 366.

Kelly Brown, Muskogee, Okl. (P. H. Hardin, Fort Smith, Ark., and John M. Wheeler, Tulsa, Okl., were with him on the brief), for appellant.

Pat Malloy, Tulsa, Okl. (William H. DeParcq and Charles Alan Wright, Minneapolis, Minn., were with him on the brief), for appellee.

Before BRATTON and HUXMAN, Circuit Judges, and CHRISTENSON, District Judge.

HUXMAN, Circuit Judge.

This was an action by appellee, James H. Cagle, against the appellant, the Kansas City Southern Railway Company, to recover damages for injuries suffered in attempting to effect a coupling of two box cars in a train being operated by appellant. It was instituted under the Coupler Provisions of the Safety Appliance Act of the United States.[1] Appellee was employed by appellant as a brakeman and was engaged in the performance of his duties at the time he suffered the injuries complained of.

The complaint alleged that at the time of the accident he was engaged in certain switching operations; that in connection therewith a coupling was to be made between two cars; that while performing his services appellant violated the Act in moving and hauling a car when the drawbar was out of alignment and in such a condition that it would not couple automatically with the other car upon impact; that as a result it was

---

1. 45 U.S.C.A. § 2 provides that "It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

**14**

necessary for him to manually align the drawbar so the coupling could be made and, while doing this, he suffered the injuries for which recovery was sought.

A trial was had to a jury. At the conclusion of appellee's evidence, appellant moved for an instructed verdict and again so moved at the conclusion of all the evidence. These motions were overruled and the case was submitted to the jury. It returned a verdict for appellee. A motion for a new trial and a supplemental motion for a new trial were overruled and judgment was entered upon the verdict.

While six assignments of error are urged, they in effect raise only two substantial issues. These are: (1) There was no evidence warranting the submission of the case to the jury; and (2) the court erred in overruling appellant's motion for a new trial and especially its supplemental motion for a new trial.

Appellee's evidence tended to establish these facts. At the time of the accident he was riding on the lead end of a car which was being backed in a southerly direction to couple with another car, referred to as the Rock Island car; that the drawbar on the car that appellee was riding on was in proper alignment and the knuckle on the coupler was open; that if the drawbar on the Rock Island car had been in line it would have been possible to couple automatically, but that the drawbar on the Rock Island car was so far out of line to the west that it was not possible to couple to it; that appellee had much experience in coupling cars and could tell on approaching a drawbar when it was out of line; that he signalled to the engineer to stop and went between the cars to pull the drawbar of the Rock Island car into line; that in doing so he suffered the injuries complained of for which recovery was sought and obtained.

The one fact upon which appellant was sought to be held liable was that it was operating a car on which the drawbar was so far out of line that it could not be coupled automatically by impact. Appellant states the question in its brief to be, "Was this one fact that the coupler was out of line a noncompliance with the Act?" We think the answer to this question must be in the affirmative.

A great number of cases have considered the scope and effect of the Coupler Provision of the Federal Safety Appliance Act. Space prevents even a listing of all the cases which have considered these provisions, let alone an analysis thereof. Without exception they have held that the Act requires that cars be so equipped that they will couple automatically by impact and can be coupled and uncoupled without the necessity of persons going between them.[2] Without exception the cases have held that operating a car on which the drawbar is so far out of line as to prevent automatic coupling violates the Act and imposes absolute liability.[3] This principle of law was restated by the Supreme Court in the late case of Affolder v. New York, C. & St. L. R. Co., 339 U.S. 96, 70 S.Ct. 509, 510, 94 L.Ed. 683, where the court again said: " * * * we held that the plaintiff did not have to show a 'bad' condition of the coupler; she was entitled to a peremptory instruction that to equip a car with a coupler which failed to perform properly 'in the switching operation was a violation of the Act, which rendered defendant liable for injuries proximately resulting therefrom, and that neither evidence of negligence nor of diligence and care was to be considered on the question of this liability.' Further, we said, 'a failure of equipment to perform as required by the Safety Appliance Act is in itself an actionable

2. Atlantic City R. Co. v. Parker, 242 U.S. 56, 37 S.Ct. 69, 61 L.Ed. 150; Hohenleitner v. Southern Pac. Co., C.C., 177 F. 796; San Antonio & Arkansas Pass Ry. Co. v. Wagner, 241 U.S. 476, 36 S. Ct. 626, 60 L.Ed. 1110; Chicago, St. P., M. & O. Ry. Co. v. Muldowney, 8 Cir., 130 F.2d 971.

3. O'Donnell v. Elgin J. & E. R. Co., 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187; Kansas City M. & O. Ry. Co. of Texas v. Wood, Tex.Civ.App., 262 S.W. 520.

wrong * * *.' " Neither is the impact of this pronouncement weakened by the further statement in the opinion that if " 'the failure of these two cars to couple on impact was because the coupler on the Pennsylvania car had not been properly opened,' the railroad had a good defense." In the first place that statement was not essential to the opinion and was, therefore, in the nature of dicta and, furthermore, it was said with respect to the consequences if the failure to couple resulted from a closed coupler and not from a drawbar so far out of alignment that automatic coupling would not result even if the coupler was open.

The trial court correctly instructed the jury that the only questions of fact were, was the drawbar so far out of alignment as to prevent automatic coupling of the two cars, and were appellant's injuries the proximate result, if the first queston was answered in the affirmative? Appellee adduced sufficient evidence to take these questions to the jury for its determination and its determination is supported by substantial evidence.

■ ■ Appellant's contention that the court erred in overruling its supplemental motion for a new trial is predicated on the discovery of new evidence after the trial. The facts which appellant asserts entitle it to a new trial on this ground are these: Before trial appellant took appellee's deposition in which it asked appellee whether prior to the date of this accident he had ever suffered any injury to his back; whether he had suffered any injury from any other cause; and whether he had had any other injury for which he had received medical attention. In general, he answered in the negative or answered none that he could remember. When appellee was on the witness stand, he indicated hopitalization in a veterans' hospital. Appellant states that this was the first instance it had notice of such hospitalization; that thereafter it made an investigation and ascertained he had made application to the Veterans' Administration claiming disability; that the claim was disallowed because not service connected; but that he was diagnosed as a constitutional psychopath. The application also revealed he had claimed that he had had stomach ulcers.

In Marshall's United States Auto Supply v. Cashman, 10 Cir., 111 F.2d 140, we said that a motion for a new trial on the grounds of newly discovered evidence must show "that the evidence was discovered since the trial; must show facts from which the court may infer reasonable diligence on the part of the movant; must show that the evidence is not merely cumulative or impeaching; must show that it is material; and must show that it is of such character that on a new trial such evidence will probably produce a different result." We do not feel that the proffered newly discovered evidence meets this test. It does not directly contradict any answers appellee gave in his deposition. All that he answered was that he had suffered no other injuries. It is doubtful if a stomach ulcer is ordinarily classified as an injury. The fact remains that appellee was working as a brakeman, apparently in an efficient manner, and that he had been so working for a considerable time. Furthermore, we are of the view that in any event this newly discovered evidence is not of such a nature as would probably produce a different result. This no doubt was also the view of the trial court.

Affirmed.