Anna **DEVLIN**, Plaintiff,

v.

**SAFEWAY STORES, INC.,** Defendant.

United States District Court
S. D. New York.
Nov. 9, 1964.

Sheldon Tabak, New York City, for plaintiff, T. Lawrence Tabak, New York City, of counsel.

Weisman, Celler, Allan, Spett & Sheinberg, New York City, for defendant, Abraham Shapiro, New York City, of counsel.

HERLANDS, District Judge.

In this personal injury action, the jury having returned a verdict of $10,000 in favor of the plaintiff, the defendant has moved to set aside the verdict as excessive and contrary to the law.

Because the factual issues submitted to the jury are somewhat unusual, the Court now accompanies its disposition of the motion with this expression of opinion.

The case was tried to the jury on a claim charging negligence in two basic respects:

(1) The plaintiff was injured as she was about to leave the defendant's supermarket, through a door properly marked "exit only" and otherwise properly constructed, when an unknown member of the public unanticipatedly forced his way from the outside of the supermarket through the partly opened exit door (instead of using a designated entrance door) and knocked or jostled the plaintiff who was thrown to the sidewalk outside the supermarket and who sustained a serious fracture of the hip or upper thigh bone. The defendant was charged with negligence in that it failed properly to maintain and supervise the particular exit door as a "safe means of egress"; and

(2) After the injury, defendant attempted to come to the aid of the plaintiff, but in so doing negligently failed to provide or obtain for the plaintiff "proper, adequate and/or sufficient hospital and/or medical care" and "moreover defendant carelessly, recklessly, and neglectfully transported the plaintiff from the said premises."

The evidence at the end of the whole case demonstrated that the first portion of the claim (that which was predicated upon the defendant's negligence with respect to the exit door) was legally insufficient for the reason that the defendant could not be held liable for the unanticipated act of an unknown

member of the public who improperly attempted to use the exit door as an entrance and who, in so doing, brought about the plaintiff's fall and the fracture and related injuries proximately attributable to that incident.

However, as to the second predicate of negligence, the Court was of the opinion that the evidence raised a question of fact: whether the defendant in undertaking to render aid and assistance to the plaintiff used due care in so doing and whether, if the defendant was guilty of negligence, the plaintiff was subjected to pain and suffering as the proximate result of such negligence.

With the consent of counsel and prior to their summations, the court gave the jury interim instructions explaining that the issues relating to the exit door, defendant's alleged negligence with regard thereto and plaintiff's injuries arising therefrom, were no longer in the case and that the only issues to be decided by the jury would be restricted and limited ones; namely, whether the defendant had conducted itself negligently in the manner in which it undertook to render aid and assistance to plaintiff after the accident, and, if so, what damages, if any, the plaintiff sustained as a result of such negligence by way of pain and suffering.

The jury was explicitly instructed that it was to determine only the question whether the plaintiff was subjected to pain and suffering attributable to any alleged negligence of defendant and that defendant could not be charged with responsibility and damages with regard to the accident itself, the injuries flowing from the accident itself, including pain and suffering flowing from that accident; i. e., defendant was responsible and liable in damages only for such *additional* pain and suffering, if any, that were attributable to defendant's negligence, if any. This left a very narrow issue for the jury's consideration.

The evidence rationally permitted the jury to find that defendant's employees had carried her into a taxicab, brought her to her home, and carried her up two flights of stairs to her apartment, where she was placed on a couch. This occurred on the day of the accident, December 9, 1960.

The evidence also permitted the jury to find that she remained in her apartment for four days, due to the continuing negligence of defendant, until December 13, 1960, when an ambulance was summoned apparently by a relative or neighbor; and she was brought to the St. Clare's Hospital.

Moreover, the plaintiff's own testimony supported a jury finding that she had been in excruciating pain and that, during the four-day period while she was at home before being taken to the hospital, she continued to endure such pain—including anxiety and anguish over the possibility that she might become crippled —and suffered from vomiting and hardly ate or slept.

The basic finding implicit in the jury's verdict—one supportable by the evidence —is that the defendant was guilty of negligence in failing to summon immediately a doctor, ambulance or policeman, but instead took her home in a taxi, as hereinabove described.

In addition, a permissible inference which the jury presumably drew is that the defendant was responsible for having deposited the plaintiff on a couch in her home without determining whether there was anyone in the apartment who could summon first aid or in any other way attend to this aged and infirm woman. The plaintiff at the time of the accident was approximately seventy-five years old.

Thus, the question posed is whether the jury's verdict of $10,000 representing its evaluation of plaintiff's damages for pain, suffering, discomfort, anxiety and mental anguish is "excessive," as that term has been construed and applied by the courts.

It is the affirmative duty of the trial judge, once a motion to set aside a judgment has been made, to exercise his discretion in determining whether or not to permit the verdict to stand, order a new trial, or condition the denial of a

new trial upon the remittitur by plaintiff of any portion of the award deemed excessive. Comiskey v. Pennsylvania R. R., 228 F.2d 687 (2d Cir. 1956).

In discussing the standards to be used by a trial court in deciding a similar issue, Judge Weinfeld, in Dagnello v. L. I. R. R., 193 F.Supp. 552, 553 (S.D.N.Y. 1960), aff'd, 289 F.2d 797 (2d Cir.1961), stated:

> "The primary responsibility for the assessment of damages rests upon the jury, which is allowed a wide area of discretion, particularly where damages are not capable of exact or slide-rule determination. Even were the Court to disagree with the amount of the award, it would not be justified in substituting its judgment for that of the combined experience of twelve jurors, unless it 'conscientiously [believed] that the jury has exceeded the bounds of propriety.' In short, the Court's ultimate power to interfere with and set aside a jury judgment on damages should be exercised only if the amount awarded is so excessive as to compel the conclusion that it is the result of passion or prejudice or is shocking to the 'judicial conscience.'"

Accord, Caporossi v. Atlantic City, New Jersey, 220 F.Supp. 508, 526 (D.N.J. 1963); Bihm v. Lykes Bros. Steamship Co., 213 F.Supp. 899 (S.D.N.Y.) (Feinberg, J.), aff'd, 323 F.2d 1005 (2d Cir. 1963).

In Fiskratti v. Pennsylvania R. R., 147 F.Supp. 765, 767 (S.D.N.Y.1957), Judge Levet used the criterion established in the early case of Barry v. Edmunds, 116 U.S. 550, 565, 6 S.Ct. 501, 29 L.Ed. 729 (1886), quoting therefrom, as follows:

> "'* * * a verdict will not be set aside in a case of *tort* for excessive damages "unless the court can clearly see that the jury have committed some very gross and palpable error, or have acted under some improper bias, influence or prejudice, or have totally mistaken the rules of law by which the damages are to be regulated,"—that is, "unless the verdict is so excessive or outrageous," with reference to all the circumstances of the case, "as to demonstrate that the jury have acted against the rules of law, or have suffered their passions, their prejudices, or their perverse disregard of justice to mislead them." In no case is it permissible for the court to substitute itself for the jury * * *.'"

See Affolder v. New York, Central & St. Louis R. R., 339 U.S. 96, 101, 70 S.Ct. 509, 94 L.Ed. 683 (1950) (citing Barry v. Edmunds, supra).

In Meehan v. Central R. R., 181 F. Supp. 594, 608 (S.D.N.Y.1960), Judge Levet stated:

> "[W]hen the sum agreed upon by the jury is so vastly at variance with what common sense and experience dictate to be a fair allowance in the particular circumstances of the case, courts have not hesitated to exercise their discretionary power to modify the verdict in the interest of fairness to all parties."

See also La France v. New York, N. H. & H. R. R., 191 F.Supp. 164, 168–69 (D.Conn.1961).

The court of appeals for this circuit, in Dellaripa v. New York, N. H. & H. R. R., 257 F.2d 733, 735 (2d Cir. 1958), declared:

> "Particularly in a case such as this, where the amount of the award is necessarily a determination that cannot be reached with exactitude, some leeway must be granted the jury. Surely the trial court has the power to set aside the jury's verdict if he believes that it is excessive, but obviously that power must be exercised with due regard for the jury's primary responsibility to fix the amount of the damages. However, responsibility for the amount of damages awarded does not lie exclusively with the jury—its responsibility is primary, but not final. The ultimate responsibility rests with the trial judge

who may set a verdict aside. His power to set aside a verdict as excessive implies that he has a duty to do so when he conscientiously believes that the jury has exceeded the bounds of propriety."

See Alexandervich v. Gallagher Bros. Sand & Gravel Corp., 298 F.2d 918, 923 (2d Cir. 1956) ("clearly erroneous" and "definite and firm conviction that a mistake has been committed"); cf. Alexander v. Nash-Kelvinator Corp., 271 F.2d 524, 527 (2d Cir. 1959) ("clearly erroneous"); Alexander v. Nash-Kelvinator Corp., 261 F.2d 187, 191 (2d Cir. 1958); Marino v. United States, 234 F.2d 317, 318 (2d Cir. 1956).

In Bucher v. Krause, 200 F.2d 576, 586 (7th Cir.), cert. denied, 345 U.S. 997, 73 S.Ct. 1141, 97 L.Ed. 1404 (1953), cited with approval in Comiskey v. Pennsylvania R. R., supra, the court stated:

"'[I]f it should clearly appear that the jury have committed a gross error, or have acted from improper motives, or have given damages excessive in relation to the person or the injury, it is as much the duty of the court to interfere, to prevent the wrong, as in any other case.' This language * * * has become, we think, horn-book law."

The issue of apparent concern to the courts of appeals has been what standard to apply in reviewing a determination by the trial judge concerning the question of excessive damages. In Dagnello v. Long Island R. R., 289 F.2d 797, 806 (1961), the Second Circuit stated the test for an appellate court as "whether the amount is so high that it would be a denial of justice to permit it to stand."

The Ninth Circuit, in Southern Pacific Co. v. Guthrie, 186 F.2d 926, 933 & n. 11 (1951), quoting from other cases, used the words "grossly excessive" and "monstrous."

In Bucher v. Krause, supra, at 587, the Seventh Circuit stated:

"[D]amages assessed by a jury are largely discretionary with it. Thus, to reverse the judgment we must con-clude that the trial court has abused its discretion in failing to conclude that the jury abused its discretion in returning a verdict of the magnitude of the one here involved."

See Jaffe, Damages for Personal Injury: The Impact of Insurance, 18 Law & Contemp. Prob. 219, 232–34 (1953) ("shock and astonishment").

The nature of the above criterion causes this court to agree with the following language in Bucher v. Krause, supra, at 587:

"We are told that if the verdict is 'grossly excessive,' * * * or 'monstrous,' * * * a failure to set it aside is an abuse of discretion. While these suggested premises amount to more than 'tenuous unrealities,' they are little more than comparatives dependent for their meaning upon the facts of each case, the nature of the damages, the wrong to be remedied."

■ The approach that this court adopts, in accordance with the above cases, in analyzing the facts of this case, is to first determine whether "there were * * * incidents, or appeals to prejudice or passion to play upon the sympathy of the jury," Dagnello v. L. I. R. R., 289 F. 2d 797, 798 (2d Cir. 1961), which would have the effect of precluding a rational verdict. Second, is the verdict so unreasonable that it would be unconscionable to permit it to stand?

The conduct and demeanor of counsel in this case were completely devoid of any appeal to the sympathies or passion of the jury.

The fact that evidence relating to both theories of negligence, as discussed above, including the nature and extent of the hip injury, was before the jury, could arguably have played upon the sympathies of the jury.

So, also, to a greater extent, could the presence of the plaintiff in the court room.

As to these factors, however, comprehensive instructions by the court as to what the jury could consider as elements

of damage must suffice to make the reason of the jury its controlling influence. Our jury system is so premised.

In his summation, plaintiff's counsel improperly referred to the *ad damnum* of the complaint, involving both theories of negligence. Objection to this reference was sustained and the jury was carefully reinstructed as to what damages they could consider and the irrelevancy of the complaint.

This single impropriety, in light of the clear and reiterated instructions to disregard, cannot be said to have caused the jury to permit sympathy to govern their deliberations. See Meehan v. Central R. R., 181 F.Supp. 594, 608 (S.D.N.Y.1960).

As to whether the verdict is so excessive as to compel setting it aside, Judge Weinfeld's statement in Dagnello v. L. I. R. R., 193 F.Supp. 552, 554 (S.D.N.Y. 1960), aff'd, 289 F.2d 797 (2d Cir. 1961) is apposite:

"It is stating the obvious that judgments as to compensation for pain and suffering and the loss of members of the body vary, not only among jurors, but among courts. No useful purpose would be served in collating the various cases, except to emphasize the contrariety of individual views. Our own Court of Appeals has not found $22,500 excessive for conscious pain and suffering experienced by an injured railroad employee who had great apprehension that his leg would have to be amputated and who died within two hours after he sustained his injury [citing Dellaripa v. New York, N. H. & H. R. R., 257 F.2d 733 (2d Cir. 1958)]."

Mindful of the responsibility of this court, in passing upon this motion, the court adheres to the conclusion of Judge Levet in Meehan v. Central R. R., supra, at 625, a case in which decedent died. from drowning when a train in which he was riding was derailed and plunged into a river, when he said:

"Under these circumstances, this court is unable to say that the decedent endured no pain and suffering.

* * * The jury has assessed a value of $10,000 to this pain and suffering. I cannot state as a matter of law that this was excessive. The decedent was presumably thrown around in the car prior to the precipitation of the car into the river and to his drowning. It is not for the court to state that the damages for such pain and suffering just prior to and during drowning are less than $10,000."

Nor can this court state that the damages for the pain and suffering and mental anguish experienced by the plaintiff in her hour wait in defendant's store, her taxi ride, being jostled up two flights of stairs, and remaining for four days without care, adequate food or sleep and not knowing what her condition was, was less than $10,000.

Motion denied. So ordered.