Juan **EMALDIO,** Appellee,

v.

**POCAHONTAS STEAMSHIP COMPANY,**
Appellant.

**No. 10010.**

United States Court of Appeals
Fourth Circuit.

Argued Nov. 5, 1965.

Decided Jan. 3, 1966.

R. M. Hughes, III, and Richard I. Gulick, Norfolk, Va. (Seawell, McCoy, Winston & Dalton, Norfolk, Va., on brief), for appellant.

C. Arthur Rutter, Jr., Norfolk, Va. (Amato, Babalas, Breit, Cohen, Rutter & Friedman, Norfolk, Va., on brief), for appellee.

Before SOBELOFF and BOREMAN, Circuit Judges, and MICHIE, District Judge.

SOBELOFF, Circuit Judge:

This is a shipowner's appeal in a Jones Act case from a judgment in the sum of $22,500 awarded against it in favor of an injured merchant seaman. The appeal was taken from the District Court's denial of the defendant's motion to set aside the jury verdict as not supported by the evidence and as excessive.

I

Juan Emaldio was employed by the defendant as a coal passer aboard the SS OAKEY S. ALEXANDER from sometime in 1961 until December 22, 1963, the date of the injury. In the performance of his duties he shoveled coal ash into a hopper, from which the ash was ejected into the sea by a mechanical device using pressurized water. In order to operate the device the coal passer must open a valve by turning a lever. Emaldio testified that on December 22, 1963, he could not turn the lever because it was stuck; that he called the acting second engineer, Boyd, for help and that after both failed to move the lever, Boyd told him to put all his strength into his task; that after exerting great pressure in an unsuccessful attempt to turn the lever, he experienced pain in his chest and stomach, as if his muscles had been ripped apart. The next day the ship docked in Boston and Emaldio was taken by ambulance to the Boston Marine Hospital.

At trial, plaintiff's theory for recovery was that the defendant's vessel had an unseaworthy appliance or, in the alternative, that one of plaintiff's fellow seamen had closed the valve by negligently turning the lever too tight, and that the second engineer was negligent in ordering Emaldio to force the lever.

The shipowner, in its defense, argued that the injury was caused by overexertion on the part of Emaldio, not attributable to the alleged defect in the lever or to any negligent conduct on the part of the ship's crew. The case was submitted to the jury on instructions, unobjected to by the defendant, which fully and correctly explained the concepts of unseaworthiness, negligence, and contributory negligence.

The defendant called no witnesses but offered the depositions of Vincent H. Poirer, William Austin and John D. Jacobs, three of the ship's officers who were on board at the time of the injury. None of the deponents, however, was present in the boiler room when Emaldio sustained his injury. Although the depositions may conflict with Emaldio's direct testimony as to some minor circumstances surrounding the episode, such as the exact hour, such conflict could in no way warrant withdrawal of the case from the jury, as requested.[1]

In addition to Emaldio's, the only live testimony was that of Dr. James Berger, a surgeon called by the plaintiff. Dr. Berger testified that he first examined Emaldio on March 26, 1964, one month after the seaman had undergone surgery for his injury. Dr. Berger testified, on the basis of Emaldio's medical records and medical history and a personal examination, that in his opinion the prob-

---

1. On appeal the shipowner complains that Emaldio, in his answers to interrogatories, stated that the only witness to the injury was Jim Sikey, a fireman, but that in his direct testimony Emaldio said that acting second engineer Boyd had ordered him to put more pressure on the lever. The shipowner argues that Emaldio's failure in his answers to interrogatories to identify Boyd as a witness involves a contradiction. This is not necessarily so, and in any event constitutes no basis for upsetting the jury verdict on appeal.

Nor would it have justified the trial judge in withdrawing the case from the jury. The asserted contradiction was argued to the jury by the defendant's counsel, who, in fact, admitted to the trial judge that the contradiction should be resolved by the jury. Moreover, the only persons who could have shed light on the point were fireman Sikey and acting second engineer Boyd. Neither of these was called as a witness nor was his deposition introduced, if any in fact was taken.

able cause of Emaldio's injury—a diastasis recti, or separation of his chest and stomach muscles—was his physical exertions on December 22, 1963. The doctor further gave it as his opinion that because of the injury Emaldio would be disabled for an indefinte period of years from doing any strenuous lifting or climbing.

■ The defendant sought to rebut Dr. Berger's testimony by introducing certain of Emaldio's medical records which, the defendant argued to the jury, supported its contention that the injury occurred after Emaldio had left the OAKEY ALEXANDER, and not during his employment.[2] The weight due Dr. Berger's testimony and the inferences to be drawn from medical records introduced by the shipowner were questions properly left to the jury.

## II

■ Turning to the defendant's second contention, that the jury award of $22,500 is excessive, we note at the outset that the authority of the federal appellate courts to review damages awards made by juries is extremely limited. See Affolder v. New York, Chicago & St. Louis Railroad Co., 339 U.S. 96, 101, 70 S.Ct. 509, 94 L.Ed. 683 (1950). We recently considered at some length the narrow scope of the authority of courts of appeals in the review of jury awards. Simmons v. Avisco, Local 713, Textile Workers Union, 350 F.2d 1012, 1019–20 (4th Cir. 1965). See also Southern Railway Co. v. Neese, 216 F.2d 772 (4th Cir. 1954), rev'd per curiam, 350 U.S. 77, 76 S.Ct. 131, 100 L.Ed. 60 (1955). It is only when a verdict may fairly be characterized as monstrous that a federal appellate court would be warranted in setting it aside. This verdict cannot be so characterized.

## III

The plaintiff-appellee requests, by way of penalty, an award of special damages and attorney's fees because of the frivolous nature of the appeal and the consequent unjust delay in the recovery due him. Authority for the award of such a penalty is found in Rule 20(2) of the Rules of this circuit, 28 U.S.C.A.:

> "In all cases where an appeal delays proceedings on the judgment of the lower court, and appears to have been sued out merely for delay, damages at a rate not exceeding 10 percent, in addition to interest, may be awarded upon the amount of the judgment."

and in 28 U.S.C.A. § 1912:

> "Where a judgment is affirmed by the Supreme Court or a court of appeals, the court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs."

■ While we agree that the appeal is lacking in merit, we do not invoke the Rule or the statute in this instance. We take occasion, however, to remind the bar of the existence of authority for the imposition of sanctions against appellants who prosecute frivolous appeals. The statute has been invoked in other circuits,[3] and this circuit will not hesitate to give vitality to the above provisions in appropriate cases.

The judgment of the District Court is Affirmed.

2. After receiving Emaldio as a patient in December, 1963, someone at the Boston Marine Hospital made the following entry on Emaldio's hospital record: "Mild Diastasis recti noted." Two months later, at the Norfolk Marine Hospital, it was determined that Emaldio required surgery for a "marked diastasis recti." A further entry appearing on Emaldio's hospital record at the Norfolk Marine Hospital indicated that Emaldio told someone at the hospital that he noted severe pain on February 2, 1964, while attempting to lift his girl friend.

3. Ginsburg v. Ginsburg, 330 F.2d 613 (6th Cir. 1964); A/S Krediit Pank v. Chase Manhattan Bank, 303 F.2d 648 (2d Cir. 1962); Ginsburg v. Stern, 295 F.2d 698 (3d Cir. 1961); Lowe v. Willacy, 239 F.2d 179, 16 Alaska 499 (9th Cir. 1956).