321 So.2d 202

**SEABOARD COAST LINE RAILROAD COMPANY et al.**

v.

**W. L. GILLIS, Jr.**

SC 877.

Supreme Court of Alabama.

Aug. 28, 1975.

Rehearing Denied Nov. 6, 1975.

728

Henry E. Simpson, Birmingham, for appellants.

Rives, Peterson, Pettus, Conway & Burge, Birmingham, for appellee.

JONES, Justice.

This is an appeal by Seaboard Coast Line Railroad Company, Louisville & Nashville Railroad Company, and Clinchfield Railroad Company from an adverse judgment based on a suit by William L. Gillis, under 45 U.S.C.A., §§ 11 (Hand Brake Act) and 51 (Federal Employers' Liability Act).

Clinchfield is a partnership whose sole partners are L&N and Seaboard. Service was obtained on L&N and Seaboard and they each filed a general appearance. Clinchfield was served by leaving a copy of the complaint with Charles B. Clegg, office manager of L&N in Birmingham, and H. H. Hollingsworth, local freight agent for L&N and Seaboard. Clinchfield's motion to quash service, contesting the service through agents of L&N and Seaboard, was denied.

When injured, Gillis was employed by Clinchfield in Virginia. His job, as a signal communicator and electrician, required him to use a company motorcar to reach places that were otherwise inaccessible except by rail. At the time of the accident, Gillis had been using the same motorcar for approximately three years. Clinchfield maintained no regular maintenance on these motorcars, but provided service upon request. The car could be stopped in either of two ways, either by pushing a brake lever forward, or by a process of stopping the engine, reversing it and starting it again, thereby causing the wheels to reverse their forward motion.

Gillis testified that he was not a mechanic, but that the brake lever was working the morning of the accident. Twice immediately prior to collision the brake lever stopped or slowed the car. The third time Gillis attempted to stop the lever jammed, resulting in brake failure. Gillis attempted to reverse the engine, but collided with the caboose of a standing train before the car could stop. Gillis suffered a fractured skull and foot injuries as well as a ninety per cent permanent disability to his wrist. The jury awarded damages of $150,000.

Three issues are before this Court for consideration. First, with respect to service of process, what is the legal effect of the internal organization of the Clinchfield partnership? Second, is an employer liable under FELA where the sole act of negligence by the employer proximately causing plaintiff's injuries is the failure to conduct a preventive maintenance schedule? Third, does the proof of such alleged negligence present a jury question under either FELA or the Hand Brake Act as to all three appellants? We answer these questions adversely to the appellants; and, therefore, the judgment below is affirmed.

Appellants argue that Clinchfield is a separate "jural entity" from its only two partners, Seaboard and L&N. Our rejection of this argument is dispositive of two primary issues. First, whether service on Seaboard and L&N through their Alabama agents authorized to receive service was sufficient to obtain jurisdiction over Clinchfield. Second, whether there is a sufficient employer-employee relationship between Seaboard and L&N and Gillis to hold Seaboard and L&N liable for Clinchfield's violation of the Hand Brake Act and FELA.

■ As to the sufficiency of service issue, appellants primarily object to plaintiff's serving of process on the agents of the partners (L&N and Seaboard) rather than on the agents of the partnership (Clinchfield). It is important to note that service upon a corporation is only possible through service upon its officers or authorized agents. Tit. 7, § 188, Code.[1] Since Clinchfield's only two partners, L&N and Seaboard, were both corporations qualified to do business in Alabama, service on their authorized agents was sufficient to obtain in personam jurisdiction over the corporations. Thus, both partners were personally served and personal service on the partners

is service on the partnership. Tit. 7, § 141, Code.

■ On the liability of L&N and Seaboard for the violation by Clinchfield, appellants rely on *Kelley v. Southern Pacific Company,* 419 U.S. 318, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974), for authority that merely a close relationship between the employer of the injured employee and the railroad does not make the railroad liable under the applicable federal statute. The *Kelley* case dealt with an employee of a trucking company which was a wholly owned subsidiary of Southern Pacific. Such a fact situation does not control a case where two railroad corporations form a partnership to operate a railroad line. In the instant case, there is not merely a close relationship between L&N and Seaboard on the one hand and Clinchfield on the other, there is an identity. For the purpose of joint and several liability, L&N and Seaboard *are* Clinchfield.

■ The next issue is appellants' liability under 45 U.S.C.A., § 51. To establish liability under FELA, Gillis must show negligence on the part of his employer. A proper analysis of FELA liability must begin with an examination of the overall relationship between the railroad and Gillis and the resulting duty of the railroad to Gillis. The type of work and the restricted amount of discretion allotted to Gillis indicate that he was in the position of servant to the railroad. He performed maintenance work on signals, communications and electrical work such as flasher lights and crossing bells on designated sections of track. To reach the areas of track which needed work, he was assigned two pieces of railroad equipment—a truck and a motorcar. The railroad's position as sole owner and ultimate controller of the vehicles assigned to Gillis placed upon it a duty to maintain those vehicles in safe working order for the protection of Gillis. In recognition of this duty, the railroad

---

1. This case was tried under the rules existing prior to the adoption of ARCP. This statute has now been superseded by Rule 4, ARCP.

gave him a credit card for the truck and hired a maintenance supervisor for the motorcar.

■ The contested issues of FELA liability are whether the railroad was negligent and whether the conduct of the railroad bore a causal relation to the accident and the resultant injuries. Both of these issues are for jury determination, but it is the function of the presiding judge at trial and this Court on appeal to decide whether the evidence introduced on either of the issues was sufficient to submit the case to the jury.

The negligence issue is comprised of two key-word elements—foreseeability and reasonable diligence.

■ To satisfy the element of foreseeability, it is not necessary for appellants to have been able to predict with accuracy the precise details of the accident. It is only necessary that there "were probative facts from which the jury could find that [appellant] was or should have been aware of conditions which created a likelihood that [appellee], in performing the duties required of him, would suffer just such an injury as he did."[2] *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). Since Gillis was regularly required to operate the motorcar on railroad tracks which were simultaneously occupied by moving and stationary trains, it was manifestly foreseeable that a mechanical malfunction in the motorcar could result in a collision with consequent injuries to Gillis.

■ As to the question whether the railroad exercised reasonable diligence to discharge its duty and avoid foreseeable injuries, evidence of the railroad's procedure for inspection, repair and maintenance of its vehicles is relevant. It is uncontested that the railroad did not conduct a trouble shooting system of inspection on its vehicles. The motorcar involved in the acci-

dent had been used by Gillis for three years and during that time no efforts were made to avert mechanical difficulties until specific problems arose. Instead of holding regular inspections, the railroad instituted a company policy that placed a duty on Gillis and other motorcar operators to report mechanical trouble when it arose by calling the maintenance supervisor.

The only trouble Gillis could spot was trouble which had already caused a malfunction. As he said on direct examination, "You run it until something got wrong with it and then you would notify the maintenance supervisor, and he would take the problem from there." On the occasion in question, a parked caboose intervened between the time Gillis discovered something wrong with the motorcar and his first opportunity to notify the maintenance supervisor. The railroad's failure to inspect or repair motorcars until .a malfunction occurred unreasonably increased the risk that such an accident would eventually occur.

The railroad relies on two facts in its defense: First, after the accident, the cause of the jammed brakes was unknown; and, second, the possibility that a prior inspection would have revealed a defect is too speculative. If the railroad had actually conducted a regular inspection procedure, these arguments would go far toward discharging its duty of care. But, in retrospect, to say that if we had inspected, perhaps we would have found nothing, avails the railroad little. As to the railroad's duty to inspect, see *Shenker v. Baltimore and Ohio Railroad Company*, 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963).

From the evidence adduced on the appellants' inspection procedures, we conclude that there were sufficient probative facts before the jury to justify the finding that the railroad breached its duty to maintain its vehicles in safe operating condition.

2. See also the recent case of *Louisville & N. R. Co. v. Dollar*, 294 Ala. ——, 314 So.2d 867 (1975).

On the issue of causation, the railroad's reply brief argues that there was no evidence that "but for" the failure to provide preventive maintenance the accident would not have occurred, nor was there any evidence that failure to conduct preventive maintenance was the proximate or direct cause of the accident. These tests, however, are not applicable to establish causation in actions brought under the FELA. In *Rogers v. Missouri Pacific Railroad Co.,* supra, the United States Supreme Court held that "[u]nder this statute [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes . . ."

In this case, a jury question of causation can be made out easily. Gillis was injured because the brakes on the motorcar he was operating jammed and he was unable to stop before hitting a parked caboose. Although the precise reason for the malfunction will never be more than conjectural, a reasonable conclusion is that there was an existing defect in the brake system which a proper inspection by the railroad would have revealed and corrected. These facts make out a jury question under *Rogers v. Missouri Pacific Railroad Co.,* supra.

The other theory for recovery argued by Gillis is under the "Hand Brake Act," 45 U.S.C.A., § 11. The language of the statute itself does not impose civil liability, but only makes it unlawful to operate railroad cars in interstate commerce which are not equipped with certain safety appliances, including "efficient hand brakes." Case law, however, has judicially imposed civil liability on employers when their noncompliance with the act causes injury to employees. United States Supreme Court decisions have imposed an absolute duty on the railroads to comply with the Federal Safety Appliance Act, and the railroad's freedom from negligence is no defense. *Affolder v. New York, C. & St. L. R. Co.,* 339 U.S. 96, 70 S.Ct. 509, 94 L.Ed. 683 (1950); *Carter v. Atlanta & St. Andrews Bay Ry. Co.,* 338 U.S. 430, 70 S.Ct. 226, 94 L.Ed. 236 (1949); *O'Donnell v. Elgin, J. & E. Ry. Co.,* 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187 (1949).

The Alabama Supreme Court has recognized this rule. *Shepherd v. Southern Railway Company,* 288 Ala. 50, 256 So.2d 883 (1970). To recover Gillis must show only that his injury was caused in whole or in part by the railroad's violation of the act. *Central of Georgia Ry. Co. v. Greene,* 202 F.2d 658 (5th Cir. 1953, Ala.). A motorcar such as Gillis was operating falls within the ambit of "cars" under the Hand Brake Act. *Martin v. Johnston,* 79 So.2d 419 (Fla.), cert. denied, 350 U.S. 835, 76 S.Ct. 71, 100 L.Ed. 745 (1955). Since a violation of the Act is made out simply by a failure of the handbrakes without proof of specific defect or lack of due care, the fact that the brakes worked properly both before and after the accident will not relieve the employer of liability if there is proof that they failed at the time of the accident. *Texas and Pacific Railway Company v. Griffith,* 265 F.2d 489 (5 Cir. 1959); *Spotts v. Baltimore & O. R. Co.,* 102 F.2d 160 (7 Cir.), cert. denied 307 U.S. 641, 59 S.Ct. 1039, 83 L.Ed. 1522 (1938); *Atchison, T. & S. F. Ry. Co. v. Keddy,* 28 F.2d 952 (9 Cir.), cert. denied 279 U.S. 856, 49 S.Ct. 351, 73 L.Ed. 997 (1928). In this case, the jury heard Gillis's uncontroverted testimony that the brake jammed. This was sufficient evidence for the jury to return a verdict that appellant violated the Hand Brake Act. Cause is obvious; Gillis could not avoid the collision because the brake on his motorcar did not work efficiently. On these facts, a jury question was made out on appellant's liability under 45 U.S.C.A., § 11.

The extent of damages under FELA is peculiarly a fact question for the

jury. *Louisville & N. R. Co. v. Dollar,* supra; *Louisville & N. R. Co. v. Steel,* 257 Ala. 474, 59 So.2d 664 (1952). Where, as here, the presiding judge fails to grant a new trial on the excessiveness of the jury verdict, the verdict is strengthened. *Mordecai v. Cardwell,* 270 Ala. 723, 121 So.2d 898 (1960). On appeal, we will not overturn the verdict unless it clearly appears to have resulted from an intentional disregard of the evidence. Such is not the case. We therefore affirm.

Affirmed.

HEFLIN, C. J., and MERRILL, MADDOX and SHORES, JJ., concur.