Thomas N. ECKERT, Appellant,

v.

ALIQUIPPA & SOUTHERN RAILROAD COMPANY, Appellee.

No. 86–3498.

United States Court of Appeals, Third Circuit.

Argued April 7, 1987.

Decided Sept. 3, 1987.

Paul L. Hammer (argued), Pittsburgh, Pa., for appellant.

Steven H. Wyckoff (argued), Jones, Gregg, Creehan & Gerace, Pittsburgh, Pa., for appellee.

Before SLOVITER, Circuit Judge, BECKER, Circuit Judge, and FISHER, District Judge *.

## OPINION OF THE COURT

CLARKSON S. FISHER, District Judge.

This is an appeal from a jury verdict which plaintiff considers to be inadequate for the injuries and other damages he sustained.[1] Specifically, plaintiff charges that the trial court sent the case to the jury only on the Federal Employers Liability Act (FELA), 45 U.S.C. Sections 51–60. This brought into issue comparative negligence, which reduced his damages. He argues to us that the trial court should have submitted the case to the jury not only on the FELA claim, but also on a violation of the Safety Appliance Acts (SAA), 45 U.S.C. Sections 1–43, and the regulations promulgated thereunder. Eckert alleges that the failure to do so was error because contributory negligence is no defense to an FELA claim when the defendant has violated either "any statute enacted for the safety of employees," 45 U.S.C. § 53, or regulations promulgated pursuant to such a statute. We agree and therefore reverse and remand.

Plaintiff Thomas N. Eckert was employed as a brakeman for defendant Aliquippa & Southern Railroad (A & S) on the date of his injury. At the time of the injury, on September 7, 1976, plaintiff was riding on the front of a northbound locomotive which was pushing a gondola car on the loop track.[2] The two cars were intended to pass through the 451–472 switch and continue on Track 472. Instead, they proceeded onto Track 451, veered suddenly and unexpectedly to the left and collided with a locomotive which was parked on Track 451, 20–25 feet from the loop switch. The cars failed to couple, and both cars derailed. As a result of the collision, Mr. Eckert was thrown about the car and injured his back, ribs and hip. An investigation of the accident revealed that an A & S employee, an office clerk for A & S, was asked to throw the switch, which would enable the railroad to move the locomotive to a parked position. This employee, who was not a switch operator, did not usually operate switches for the railroad. He failed to realign the switch into the open position (as is the practice) after the locomotive had been parked on the track. This position of the switch caused the cars upon which plaintiff was riding to proceed onto the wrong track and collide with the parked locomotive.

The investigation also revealed that the switch indicator lights were not operative on the night of the accident. The battery-operated indicator lights have four colored lenses, two blue-green lenses and two red lenses. When the switch handle is turned to direct railroad traffic straight ahead, the green lenses light. When it is not, the red lenses light, thereby warning the trainman of an approaching switch. Plaintiff alleges that he thought the train was farther south than it actually was because he did not see the (then unlighted) switch indicator light.

---

* The Honorable Clarkson S. Fisher, Chief Judge of the District of New Jersey, sitting by designation.

1. A verdict was returned in favor of plaintiff on July 31, 1986, in the amount of $22,371.36, reduced by the jury's finding that the plaintiff was 75% contributorily negligent. Judgment of $5,612.75, plus costs, was entered for plaintiff.

2. Among the various tracks are Track 495 and Track 472, parallel tracks which run north-south along the western bank of the Ohio River. South of this site is a point of intersecting track called the "loop," at which Track 451 crosses 472 and then branches off to the northwest. A switch controls the point at which they intersect.

Two buildings north and south of the accident site have floodlights which, the parties concede, would illuminate the area of the switch if lighted. The parties stipulated that the floodlights were not lighted on September 7th, and that the area is very dark without the lights. Furthermore, the lantern issued to plaintiff illuminates for a distance of only 50 feet at night. Plaintiff admits that, although the switch is approximately 3 feet away from the rail on the track, he paid no attention to the unilluminated switch indicator.

The district court ruled immediately before trial that both the SAA and the Federal Railway Regulations promulgated thereunder were inapplicable to the case. Further, it precluded plaintiff from presenting any evidence pertaining to this cause of action and rejected offers of proof relating to the SAA issue.[3] Although the court took judicial notice of the Federal Railway Regulations, which require switch position indicators to be visible clearly at all times, the court refused to charge the jury with plaintiff's requested points on the regulations. Further, although plaintiff argued that the failure of the cars to couple contributed to the accident, the court also refused to permit testimony to this end. The district court determined that the SAA "has no causal relationship to this accident." (App. 53a)

Recently, in *Beissel v. Pittsburgh and Lake Erie R. Co.*, 801 F.2d 143 (3d Cir.) *cert. denied,* — U.S. —, 107 S.Ct. 1296, 94 L.Ed.2d 152 (1986), this Court held that a trial court commits reversible error by failing to submit an SAA claim to the jury when a provision of the Act has been violated through a violation of a regulation promulgated thereunder.[4] *Id.* at 145. In the case herein, plaintiff alleges that the

district court refused to submit to the jury either the issue of the failure of the cars to couple, a violation of the SAA, 45 U.S.C. § 2, or the issue of a failure to operate of a switch position indicator.

■ Plaintiff made an offer of proof consisting of evidence by witnesses, including plaintiff,[5] of experienced railroad men regarding the violations of the SAA and the Regulations promulgated thereunder.

■ Section 2 of the SAA provides:
Automatic Couplers
It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or add on its line any cars used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of cars.

The duty imposed by the SAA is not based upon any negligence on the part of the railroad, but is an absolute duty. Equipment failure constitutes an actionable wrong and negligence is not an issue in cases involving violations of the SAA, and proof of care or diligence does not provide evidence of liability. *O'Donnell v. Elgin, J & E R.R. Co.*, 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187 (1949).

In *Affolder v. N.Y.C. & St. L.R. Co.*, 339 U.S. 96, 70 S.Ct. 509, 94 L.Ed. 683 (1950), the Supreme Court again took up the question of responsibility and duty under the SAA. Plaintiff there contended that the failure of one car to join another on impact was in itself a violation of the SAA, and defendant "took the position that the criterion of the Act is 'were the cars equipped with efficient couplers?'" The Court held that there was no relevance in the railroad

---

**3.** Specifically, the trial judge refused to permit the testimony of plaintiff relating to causation (App. 60a) and the cross-examination testimony of Baker pertaining to the duty of the railroad to maintain the switch indicator light (App. 362a–363a).

**4.** The *Beissel* court therefore discussed safety regulations because the violation of the regulations constitute a violation of the statutory duty as defined by the Secretary of Transportation

pursuant to his rulemaking authority under the SAA. 45 U.S.C. § 12; *see also* 49 U.S.C. § 1655(e)(1)(A) (also granting rulemaking authority).

**5.** Plaintiff, employed by the railroad for 30 years and fully familiar with railroad procedures, was qualified to testify as to whether injuries would have occurred had the cars properly coupled. Fed.R.Evid. 701, 702.

showing normal efficiency of the couplers in an action under the SAA. The railroad's duty under the Act is absolute regarding performance "on the occasion in question" and is not based upon a showing of negligence in operation or a showing that the couplers were in an unsafe condition. The failure to perform constitutes the violation. Plaintiff therefore is not obliged to prove common-law proximate causation, but only that his injury resulted in whole or in part from a violation of the Act.

█ Proof of such a violation carries independent significance beyond establishing another basis, besides a violation of the FELA, for recovery against the carrier. 45 U.S.C. § 53 provides that no employee

> shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.

Because the SAA is a statute enacted for the safety of employees, Eckert's award could not have been reduced for contributory negligence if he had proved a failure of the couplers. *See, e.g., Hartley v. Baltimore & O R. Co.*, 194 F.2d 560, 563 (3d Cir.1952); *Neal v. Sage Shipping Co.*, 407 F.2d 481, 485–86 (5th Cir.), *cert. denied*, 396 U.S. 871, 89 S.Ct. 2143, 23 L.Ed.2d 775 (1969). Foreclosing this opportunity was therefore prejudicial error by the trial court.

█ The district court, therefore, was in error not only in refusing to submit the failure to couple issue to the jury but also in refusing the testimony of plaintiff, in light of his long experience, that the injury would not have occurred had the cars properly coupled. *See Phillips v. Chesapeake and Ohio Railway Company*, 475 F.2d 22, 25 (4th Cir.1973). We hold further that the failure of the district court to submit the issue of the failure of the switch to be operative and the refusal of the trial judge to permit testimony, both lay and expert, was improper.

Under 45 U.S.C. § 431, the Secretary of Transportation has the authority to issue appropriate regulations relating to safety appliances and equipment on railroad engines and cars. The Secretary accordingly has adopted regulations for switch position indicators, codified in 49 C.F.R. 213.135(g) as follows:

> PART 213—TRACK SAFETY STANDARDS
> Section 213.135 Switches
> (g) each switch position indicator must be visible at all times.

The parties stipulated that the switch indicators were not operative at the time of the accident. This is a *de facto* violation of the regulations.

Congressional intent to afford injured railroad employees a remedy against their railroad employers is strong. "The Federal Employers Liability Act was designed to put on the railroad industry some of the cost for the legs, eyes, arms and lives which it consumed in its operations." *Wilkerson v. McCarthy*, 336 U.S. 53, 68, 69 S.Ct. 413, 420, 93 L.Ed. 497 (1949) (Douglas, J., concurring), *rehearing denied*, 336 U.S. 940 (1949). The railroad is liable in damages to any employee for injuries resulting in whole or in part from railroad negligence, or from *any* defect or insufficiency in the railroad's equipment due to its negligence. 45 U.S.C. Section 51 (emphasis added).

Eckert also argues that it was error for the district court not to have instructed the jury that if the switch light regulation was violated, Eckert's own negligence was irrelevant since under 45 U.S.C. § 53, if a violation of a safety statute is the cause of an employee's injury, an award cannot be reduced for contributory negligence. The district court refused to instruct the jury on this issue on the ground that a regulation does not fall within the meaning of "safety statute" as required by 45 U.S.C. § 53.

█ Because the Jones Act specifically incorporates the FELA, somewhat analogous to this situation is *Kernan v. American Dredging Company*, 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958), in which the Supreme Court found other federal safety regulations to be "safety statutes" within the meaning of the Jones Act and the FELA. In *Kernan*, the Supreme Court addressed a violation of 33 C.F.R. 80.16(h),

which requires certain Coast Guard scows to carry a white light not less than 8 feet above the water. A seaman was killed when a lamp which was being carried approximately 3 feet above the water line ignited flammable vapors lying above an accumulation of petroleum products spread over the surface of the water. The Court held that the employer was liable under the FELA and therefore the Jones Act, without a showing of negligence, for the death of the employee which resulted from a violation of the Coast Guard regulations, which were promulgated pursuant to a safety statute. Similarly, we hold that a violation of the Secretary's Regulations is actionable within the meaning of 45 U.S.C. Section 51. Moreover, for purposes of 45 U.S.C. § 53, the effect of violating the regulations concerning the switch position is the same as violating a safety statute: a violating carrier cannot interpose the defense of contributory negligence. *Cf. Beissel*, 801 F.2d 145–48 (violation of SAA regulation constitutes violation of SAA); *Practico v. Portland Terminal Co.*, 783 F.2d 255 (1st Cir. 1985) (violation of OSHA regulation is violation of safety statute for purposes of 45 U.S.C. § 53).

Railroad employees injured as a proximate cause of equipment failure have an FELA cause of action. An employee

who is injured by reason of a violation of the Acts may pursue a cause of action against the carrier pursuant to the FELA. *See Lilly v. Grand Trunk Western Railroad Company*, 317 U.S. 481, 63 S.Ct. 347, 87 L.Ed. 411 (1943). In short, the Safety Appliance Acts provide the basis for the claim, and the FELA provides the remedy.

*Biessel*, 801 F.2d at 145 (citation omitted).

Proof that the railroad's violation of 49 C.F.R. 213.135(g) contributed to plaintiff's injuries is a necessary element of plaintiff's case. Testimony relating to this issue should have been admitted, and the jury should have been instructed on this issue. The standard of proof imposed upon a plaintiff alleging an SAA claim is less stringent than the standard employed with regard to an FELA negligence claim.

Under this statute the test of a jury case is simply whether the proofs justify the conclusion that employer negligence played any part, *even the slightest*, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence.

*Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957) (emphasis added). The Supreme Court standard is that a district court is justified in withdrawing such issues from the jury's consideration "only in those extremely rare instances when there is a zero probability either of employer negligence or that any such negligence contributed to the injury of an employee." *Pehowic v. Erie Lackawanna R. Co.*, 430 F.2d 697, 699 (3d Cir.1970). Such is not the case here, and the issue should have been before the jury.

Accordingly, the judgment will be reversed and the case remanded for a new trial, at which time plaintiff will be permitted to introduce evidence pertaining to the alleged violations of the Safety Appliance Acts and Regulations instituted to implement the Acts and other safety statutes.

Plaintiff further assigns as an abuse of discretion the trial court's failure to allow further discovery as to wage and benefit losses.

On June 10, 1986, present counsel took control of the file and immediately moved for an extra ninety days to complete discovery. Counsel for appellee consented. The trial court, however, despite the consent, allowed only a ten-day discovery period. Apparently the court was unwilling to grant the full 90 days requested because it would have taken the discovery period beyond the projected trial date of July 28, 1986. Appellant argues that the additional time requested would have permitted him to cure deficiencies in his proof which may have substantially reduced the wage and fringe benefit claims. Although the trial court's failure to give any more than ten days' additional time for discovery appears to have been extremely restrictive in the circumstances, we need not decide whether the trial court abused its discretion. Since

the matter will be remanded and undoubtedly there will be some time period before it is rescheduled for trial, we assume that appellant will renew its request for some additional time for discovery on the amount of salary and fringe benefits which will not impede proceeding with the trial when scheduled.

Plaintiff has raised other claims which we need not reach in view of the disposition of this matter.

The judgment below will be reversed, and the case remanded for a new trial.