Thomas **HAYES**, Plaintiff-Appellee,

v.

**NEW YORK CENTRAL RAILROAD CO.**, Defendant-Appellant.

No. 165, Docket 27555.

United States Court of Appeals Second Circuit.

Argued Dec. 6, 1962.

Decided Dec. 18, 1962.

Gerald E. Dwyer, New York City (Jerome H. Shapiro and Edward J. Murphy, New York City, of counsel), for appellant.

Bromsen & Gammerman, New York City (Melvin A. Cohen, New York City, of counsel), for appellee.

Before SWAN, FRIENDLY and KAUFMAN, Circuit Judges.

KAUFMAN, Circuit Judge.

The defendant appeals from an adverse judgment in the sum of $22,500 entered upon a jury verdict in an action brought under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. It contends that there was no proof of negligence on its part which was the proximate cause of plaintiff's injuries, and that even if there was, the proof of plaintiff's contributory negligence was so overwhelming as to render the verdict excessive. We disagree and affirm the judgment of the District Court.

The plaintiff, Thomas Hayes, was given temporary employment by the New York

Central Railroad for the purpose of clearing snow from switches in the Weehawken, New Jersey railroad yards. He was hired on February 16, 1958 at 1 p. m. during the course of a severe snowstorm. The temperatures that day were low and the winds gusty. The plaintiff, who had left his home with the intention of visiting a friend, but who learned of and seized the opportunity to earn some extra money working for the railroad, was clad only in an overcoat, light sweater, low shoes, and rubbers. Thus attired, he was ordered by one of the defendant's employees to report to the foreman who was preparing to take other men into the yard for the purpose of shoveling snow. Apparently dubious about the sufficiency of his clothing to withstand the weather during the arduous hours that lay ahead, the plaintiff requested permission, before reporting to the foreman, to go next door to the Union Drydock and Repair Company (where the plaintiff had been employed some months before) to secure a pair of boots. In the plaintiff's words, the hiring employee "leaned over the desk and he looked at my feet, and he said, 'No, you are all right.' He said, 'You will have to go downstairs because we are short of men.' "

Plaintiff commenced his work and, standing in one to two feet of snow, he shoveled from 1 p. m. on February 16 until—with the exception of four breaks lasting 45 minutes to an hour—3:45 p. m. the next day, some 27 hours later. His first break was spent eating dinner; his second break, at 2:30 a. m. on February 17, was devoted to sandwiches and coffee. At that morning break, plaintiff observed many of his colleagues changing their shoes and socks. Although he noted that his feet were quite wet above his low shoes, he had no change available and could not follow suit. For his third break, later in the morning of the second day and some 16½ hours after starting work, the plaintiff, undaunted, walked a mile to a diner for breakfast, and returned there for lunch that afternoon, shortly before stopping work. Throughout these 27 hours, the weather was bitter. For 16 of those hours, snow fell. During 17 hours, the temperature ranged from 6° to 10°, and for the remaining 10 hours, from 10° to 22°; wind velocity went as high as 49 miles per hour. Although plaintiff admittedly could have terminated his temporary employment, and might have been expected to know enough to "come in out of the snow," he chose to work on under these conditions. As a result, plaintiff learned some days later that his feet had become frostbitten—a condition of which one does not ordinarily become aware until after it has occurred because of its numbing effect in the incipient stages.

Plaintiff was hospitalized, underwent a serious and protracted operation, suffered considerable pain, and now claims a permanent disability and impairment of the normal use of his feet and legs. Upon proof of these facts and of medical and hospital expenses of some $3,769.85, the jury returned a verdict of $22,500.

We should state, first, the principles of law which guide us in actions brought under the Federal Employers' Liability Act. We know that contributory negligence does not preclude recovery altogether but only diminishes the damages recoverable, 45 U.S.C. § 53, and that the defense of assumption of risk has been abolished, 45 U.S.C. § 54. In such actions, the test for sufficiency of evidence warranting submission to the jury of the issue of negligence has been established in unequivocal terms by the Supreme Court: "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought," or whether the "negligence of the employer played any part at all in the injury or death." Rogers v. Missouri Pac. R. R., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957). See Moore v. Terminal R. R. Ass'n, 358 U.S. 31, 79 S.Ct. 2, 3 L.Ed.2d 24 (1958); Shepard v. New York, N. H. & H. R. R. Co., 300 F.2d 129 (2d Cir. 1962).

In the case before us, the evidence was such as to make it reasonable for the jury to believe that plaintiff was assured by the defendant's hiring agent that he could safely embark upon his day's work without further protection for his feet against the snow and prevailing weather conditions. Moreover, he was effectively prevented from securing boots at the time of his hiring by the admonition that work had to start immediately because the railroad was short-handed. While it is true that plaintiff could have discontinued his work at any time, and therefore was no doubt substantially to blame for his ensuing injury, it was certainly reasonable for the jury to conclude that the plaintiff was justified in relying upon the defendant's assurance and admonition, and that this reliance contributed in some measure to his inaction and ultimately to his injuries. We find, accordingly, that Judge Bartels did not commit error in submitting the issues of negligence and proximate cause to the jury.

The defendant has urged us to find that there was no proof that if the plaintiff had secured boots, the severity of the frostbite would have been lessened. But, there was medical testimony that the risk of frostbite was enhanced by exposure and that its severity was augmented by so-called "immersion foot" or wet foot, which the jury could reasonably find to have been caused by the wearing of low shoes and rubbers rather than boots.

Finally, the defendant contends that the verdict was excessive, especially in light of the substantial contribution of plaintiff's negligence to his injuries. The power of an appellate court to supervise the award of damages in this class of case is limited indeed. Reversal is in order only when the award is so excessive as to shock the conscience of the court. See Affolder v. New York, C. & St. L. R. R. Co., 339 U.S. 96, 70 S.Ct. 509, 94 L.Ed. 683 (1950); Taylor v. Canadian Nat'l Ry. Co., 301 F.2d 1 (2d Cir.), cert. denied, 370 U.S. 938, 82 S.Ct. 1585, 8 L.Ed.2d 807 (1962).

The plaintiff's hospital and medical bills totaled nearly $3800. In years past, he engaged in occupations requiring him to walk considerable distances for considerable periods of time; he can now walk only a block or two without feeling severe pain which requires him to rest until it subsides. He suffered considerable pain during and after his confinement for more than three months in two hospitals, and the jury could also consider in its computation of damages the fear and anxiety which plaintiff experienced in knowing of the ever-present threat of amputation. These factors, reinforced by the plaintiff's permanent and painful disability projected over a life expectancy of almost 23 years, lead us to conclude that the jury's verdict of $22,-500 is not excessive.

Judgment affirmed.