**Adrian ARTMAN and Jean Ann Artman, Plaintiffs-Respondents,**

v.

**Richard J. O'BRIEN and Esther M. O'Brien, Defendants-Appellants.**

No. 32102.

St. Louis Court of Appeals.

Missouri.

Dec. 21, 1965.

John Torrey Berger, Jr., of Lewis, Price, Tucker, Allen & Chubb, Clayton, for appellants.

Elmer J. Meyer, Ferguson, for respondents.

CLEMENS, Commissioner.

This case presents a problem ever-present at real estate closings: "Who will pay the taxes?" Here, the parties' solution to the problem did not stand the test of time. The plaintiffs-purchasers sued the defendants-vendors to recover the amount of real estate taxes accrued against the real estate on the date of transfer. Plaintiffs paid the taxes and then sued defendants, claiming it was the defendants' obligation. Judgment was for the plaintiffs, and the defendants appeal. Plaintiffs base their claim on the parties' original sales contract. Defendants contend their original obligation was modified by a subsequent closing agreement and, also, was extinguished by the warranty deed which consummated the original sales contract. Plaintiffs contend here that the closing agreement and the warranty deed were executed under a mutual mistake of fact as to the amount of the taxes.

The cause was submitted to the trial court upon cross-motions for summary judgment, by which motions the parties concede that there is no genuine dispute as to any material fact. The motions admit execution of the original sales contract and of the subsequent closing agreement and warran-

ty deed. We now relate the substance of these three instruments and the facts as to taxes.

The defendants were in the business of building houses, and they owned a vacant homesite in St. Louis County. In April of 1962, they agreed by the written sales contract to build a dwelling on the lot and convey it to the plaintiffs within one year. Thereby, the plaintiffs promised to pay the defendants $27,340 plus other expenses "as per usual closing practices," including title costs, survey, recording fees, etc. As to taxes, the sales agreement said: " * * * general taxes * * * to be prorated and adjusted to date of closing; general tax year to run from January 1st; * * *." It is this clause that gives rise to plaintiffs' claim.

A year later the house was finished and on April 1, 1963, the sale was closed. A closing statement was prepared, read, accepted and executed by the parties, whereby the defendants agreed to do some repair work desired by plaintiffs; and they charged the plaintiffs with the purchase price plus title charges, survey expense, and certain construction "extras" which plaintiffs had ordered during construction. And, by the closing statement, the defendants gave plaintiffs credit for their downpayment, for the proceeds of a purchase loan, for some furnishings the plaintiffs had supplied, and "general taxes for year 1963, $60.00, prorated for 3 months, $15.00."

Also on April 1, 1963, the defendants executed and plaintiffs accepted and recorded, a general warranty deed to the premises. The defendants thereby warranted title "* * * excepting, however, the general taxes for the calendar year 1963 and thereafter, * * *."

General taxes on the premises paid by defendants for the previous year of 1962 were $60. The amount of general taxes for 1963 was not known to the parties when they closed their transaction on April 1, 1963. That amount could not then be known for several months, until the property had been assessed, the rates of levy of the various taxing bodies had been declared, and those rates had been extended onto the tax books. (See Chapter 137, RSMo 1959, V.A.M.S.) Taxes for the year 1963 were eventually levied in the amount of $485.41, which plaintiffs paid. They contend that the defendants should be charged with one-fourth of that amount, $121.35, instead of one-fourth of the 1962 taxes, $15. Their petition asks for the difference, $106.35.

As said, the case was submitted to the trial court on cross-motions for summary judgment; and when judgment was rendered for plaintiffs for $106.35, the defendants appealed. Defendants contend that their own motion for summary judgment should have been granted. We are compelled to agree.

■ Defendants contend that the sales contract was modified and superseded by the closing agreement. The sales contract was an executory agreement, the essence of which was the ultimate exchange of title and purchase price. An adjustment for credits and charges for items not intially ascertainable was inherent in the sales contract. The parties thereafter executed a new contract by executing the closing agreement, which modified the original sales contract by substituting new obligations. The warranty deed was then executed and accepted in accordance with the modified agreement. Absent fraud or mistake, the terms of the modified contract were binding on the parties. 91 C.J.S. Vendor and Purchaser §§ 113, 119; Davis v. Culmer, 221 Mo.App. 1037, 295 S.W. 803 [3–6]; Rice v. Provident Life & Accident Ins. Co., 231 Mo.App. 560, 102 S.W.2d 147 [6].

■ Defendants further contend that the obligations of the original sales con-

tract were discharged by and merged into the warranty deed accepted by the plaintiffs. This doctrine of merger is stated in 2 Devlin on Deeds (3d Ed.), p. 1570, § 850a: "* * * 'No rule of law is better settled than that where a deed has been executed and accepted as performance of an executory contract to convey real estate, the contract is functus officio, and the rights of the parties rest thereafter solely on the deed.'" The doctrine was applied in the early case of MacLeod v. Skiles, 81 Mo. 595, where plaintiff relied on a sales contract to recover taxes which were later excluded by the terms of the deed executed in pursuance of the contract. At loc. cit. 604, the court said:

"* * * The covenant in this deed especially saves and excepts the taxes of 1877. The party cannot accept a deed with such a covenant and escape its force and effect by verbal protestations and stipulations to the contrary. If he does not like the deed with such a limitation he had the right, and it was his plain duty, not to accept it at all. He was not compelled to do so. By its acceptance he abandoned and waived the prior written agreement which called for a general warranty. This prior written agreement, it may be remarked, was executory in its character and the delivery and acceptance of the deed in question abrogated the prior agreement, and thereafter the rights and liabilities of parties are measured and determined by the contracts and covenants in the deed so delivered and accepted. [Citing cases.] * * *"

For later applications of the doctrine of merger, see numerous cases listed in 10A Mo.Dig., Deeds, ☞94. For this further reason, plaintiffs may not rely on the abandoned provisions of the sales contract.

The plaintiffs do not deny these general defenses of modification and merger. They seek to avoid them by arguing that they do not apply here because there was a mutual mistake of fact. They say that at the time the closing statement was executed, both parties "thought they were adjusting the taxes in accordance with the sales contract"; and that all parties assumed that "the taxes for 1963 would be $60.00." To support the legal basis of this contention, plaintiffs cite five cases: "Bubach vs. Musick, 256 S.W. 116 (Mo.App., 1923); Barger vs. Healy [276 Mo. 145], 207 S.W. 499 (Mo., 1919); Employers Indemnity Corp. vs. Garrett [327 Mo. 874], 38 S.W. 2d 1049 (Mo., 1931); Regan [Ragan] vs. Schreffler, 306 S.W.2d 494 (Mo., 1957); Smith vs. Gethens [Githens], 271 S.W.2d 374 (Mo.App., 1954)." These cases merely acknowledge that the principles of modification and merger are applicable in the absence of fraud, accident or mistake; but not one grants relief on the ground of mutual mistake, as plaintiffs urge us to do here.

■ A mutual mistake is one common to both contracting parties, wherein each labors under the same misconception as to a past or existing material fact. See 17 C. J.S. Contracts, § 144a; Oakley v. Duerbeck Company, Mo., 366 S.W.2d 430 [2]; and Jennings v. Metropolitan Life Ins. Co., Mo. App., 166 S.W.2d 339 [2–5], for these further qualifying words: "* * * But a mutual mistake in prophecy or opinion may not be taken as a ground for rescission where such mistake becomes evident through the passage of time. What is today only a conjecture, an opinion, or a guess, might by tomorrow, through the exercise of hindsight, be regarded then as an absolute fact. * * *"

■ To bring plaintiffs within the ambit of the exception of mutual mistake, there are before us only the facts we have stated at the outset of this opinion and the argument in plaintiffs' brief that the parties were mutually mistaken as to the amount of taxes for 1963. In oral argument here, plaintiffs' counsel says that mutual mis-

take may be *inferred* from record. However, mutual mistake is an affirmative issue, and proof thereof must be clear and convincing. 17A C.J.S. Contracts § 584a; Psinakas v. Magas, 161 Mo.App. 19, 142 S.W. 1086 [1]; and Lemp Hunting & Fishing Club v. Hackmann, 172 Mo.App. 549, 156 S.W. 791 [4]. The record here does not meet that standard.

■ At the time of closing, on April 1, 1963, the amount of the current taxes could not be ascertained; so it was impossible to conclude the sale precisely as agreed upon in the sales contract. Instead of solving the problem say by an escrow agreement or by a warranty in the deed, the parties chose to do so by a new agreement, using the amount of the previous year's taxes as the basis for concluding their executory contract of sale. No facts appear to support plaintiffs' contention that all the parties then "thought they were adjusting the taxes in accordance with the sales contract," or that all parties assumed "the taxes for 1963 would be $60.00." The record here simply does not support a finding of mutual mistake, as that term has been defined above; so we must deny plaintiffs' contention of mutual mistake. That finding leaves unchallenged the defendants' meritorious contentions as to modification and merger, and it follows that they should prevail.

The judgment should be reversed and the cause remanded with instructions to enter judgment in favor of the defendants.

PER CURIAM.

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court.

Accordingly, the judgment is reversed and the cause is remanded with instructions to enter judgment in favor of the defendants.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.