**S. G. PAYNE & COMPANY, a corporation, Plaintiff-Appellant,**

v.

**James S. NOWAK and Lillie I. Nowak, Defendants-Respondents.**

**No. 33784.**

St. Louis Court of Appeals, Missouri.

Feb. 23, 1971.

Motion for Rehearing or to Transfer to Supreme Court Denied March 23, 1971.

W. W. Sleater, St. Louis, for plaintiff-appellant.

Donald G. Scheiter, Florissant, for defendants-respondents.

WEIER, Commissioner.

Suit was filed in the magistrate court for a balance alleged by plaintiff to be due it on a real estate transaction in the sum of $508.54. After appeal, the case was tried in the circuit court before a jury, resulting in a verdict and judgment for defendants. Plaintiff has appealed to this court.

The issues arise out of an exchange of property between plaintiff, S. G. Payne & Company, a corporation, hereinafter referred to as Payne & Co., and defendants, James S. Nowak and Lillie I. Nowak. The Nowaks entered into a written contract dated August 9, 1966, with Payne & Co., whereby the defendants agreed to purchase a house and lot owned by plaintiff and located at and known as 7409 Milan, University City, Missouri, for the price of $13,-500.00. Payment of this consideration was to be accomplished by the transfer of a 1960 model station wagon automobile owned by the Nowaks, on which there was no lien, at an agreed amount of $1,000.00; the conveyance of a two-bedroom house located at 10515 Olmstead, also owned by the Nowaks, with a stated equity of $500.00, on which there was an indebtedness evidenced by a note and deed of trust held by Modern American Mortgage Corporation, Little Rock, Arkansas. The Nowaks were to obtain a loan on the Milan property to pay the balance to Payne & Co.

The closing of the transaction and transfer of the properties were accomplished on September 15, 1966, the date set by the contract. The controversy which became the subject of this lawsuit arose after the delivery of the papers and acceptance of possession by the respective parties.

Stuart G. Payne, president of Payne & Co., testified that when original negotiations were had by the parties, the Nowaks assured him the balance of the loan on the Olmstead property was $9,000.00; that "their exact words was to the effect that it wasn't over $9,000.00." Mr. Nowak, in his testimony, related that when Mr. Payne asked him about the balance he replied that he didn't know for sure, but that it was approximately $9,000.00. He had never received a payment book or record from Modern American Mortgage showing the principal balance. Mrs. Nowak had the same recollection as to the conversations on this matter as that retained by her husband.

The reference to the balance which appeared in the contract indicated a loan balance of $9,000.00. Mr. Payne prepared the closing statements of September 15, 1966, and in the one concerning the Olmstead property, which was signed by the Nowaks, appears this phrase: "Unpaid loan balance $9,000.00 approximate."

As to any attempt by parties to obtain the correct information from Modern American Mortgage, the evidence discloses

an authorization was forwarded to the lender dated September 12, 1966. It directed Modern American Morgage to give Payne & Co. the loan assumption figures or payoff and the certificate of title on the Olmstead property. It was executed by defendants after being prepared by Payne. A reply from Modern American Mortgage, dated September 28, 1966, was received by Payne within a day or so thereafter. It disclosed a balance, which, with interest, exceeded the sum of $9,000.00 by $508.54. This reply, of course, was received well after the closing date of September 15, 1966.

The contract provided an additional fifteen days in which to close, if unavoidable delay prevented closing on the day specified; that is, on September 15, 1966. Payne testified the Nowaks insisted on closing that day, but this was disputed by both Mr. and Mrs. Nowak. They said they were in no hurry to leave the Olmstead residence.

Plaintiff on appeal contends that, based on the evidence, the trial court should have sustained its motion for directed verdict filed at the close of all the evidence since it was admittedly true that the actual amount due exceeded the amount set out in the contract and closing papers by $508.54, the amount sued for. We are unable to agree with plaintiff.

Mr. Payne had been a real estate broker for ten or twelve years and had handled 500 to 600 real estate transactions during that time. He was familiar with closing practices in the metropolitan area of St. Louis and had personally closed many of the transactions in which he was involved. He was well aware that the figure of $9,000.00 given him by the Nowaks was an approximation of the balance due on the loan and not a representation that he could rely on as being accurate. He had himself prepared the closing statement, using the word "approximate" in describing that balance. In addition, he had prepared and forwarded, although somewhat late, an authorization and request for the correct information and this had been executed by defendants. Obviously, he could have obtained this information before the day of closing merely by using his telephone. But Payne & Co. closed on September 15, 1966, without requiring any sum to be held in escrow pending receipt of the information, or without making provision by written agreement for the payment of any additional sum or the refund of any amount overestimated.

In speaking of the law in a similar case where the taxes on real estate were estimated at $60.00 and when levied came to $485.-41, Clemens, C., in Artman v. O'Brien, Mo. App., 398 S.W.2d 24, 26, stated:

"The sales contract was an executory agreement, the essence of which was the ultimate exchange of title and purchase price. An adjustment for credits and charges for items not initially ascertainable was inherent in the sales contract. The parties thereafter executed a new contract by executing the closing agreement, which modified the original sales contract by substituting new obligations. The warranty deed was then executed and accepted in accordance with the modified agreement. Absent fraud or mistake, the terms of the modified contract were binding on the parties. 91 C.J.S. Vendor and Purchaser §§ 113, 119; Davis v. Culmer, 221 Mo.App. 1037, 295 S.W. 803[3–6]; Rice v. Provident Life & Accident Ins. Co., 231 Mo.App. 560, 102 S.W.2d 147[6]."

When the closing statements were executed, the sales contract was modified by their terms insofar as they might be at variance with the sales contract. And when the deeds were executed and delivered, they were accepted as performance of the executory contract of sale. All prior commitments were merged into the deeds unless, by express contract, certain matters were held open to be completed at a later time. Artman v. O'Brien, supra, 398 S.W.2d 24, 26[3, 4].

The case before us is not a case of fraud, accident or mutual mistake. No

material misrepresentation was made by defendants. Their statement as to the balance was nothing more than an opinion, or approximation, and was so described in the closing statement. Plaintiff's president, with his knowledge and experience, was in no position to claim reliance. As to mutual mistake, neither party labored under a misconception of a material fact. Defendants gave their estimate. Plaintiff elected to accept this rather than to determine the exact amount, which was readily available. Even equity will not relieve against mistake when the party complaining had within his reach the means of ascertaining the true state of facts, and, without inducement by the other party, neglects to avail himself of his opportunities of information. Barrett, Fitch, North & Co. v. Hudson, Mo.App., 403 S.W.2d 944, 947[2].

 Plaintiff's second and final contention is that error was committed by the court when it sustained defendants' objection to a portion of the argument of plaintiff's counsel. In his closing argument plaintiff's counsel called attention to a rhetorical question which he thought had been made by opposing counsel. It came out as follows:

"Now there's only one thing that I'd like to point out about what Mr. Scheiter said: What difference does it make when they discovered what the correct balance was? If it were discovered beforehand, it would be reflected in the closing by increasing the amount that would be shown as the loan."

Objection was made to this as speculative. The court sustained the objection.

Counsel maintains he was trying to point out to the jury that if the correct information had been known before closing, then adjustments would have been made and the obligation of defendants for the increased amounts would have been included in the closing statement. But this does not necessarily follow. Adjustments might not have been made. The parties might have been well satisfied with the closing as it was without changing the amounts. Considering the availability of the information at the time, this would seem to be a logical conclusion. But counsel would seem to imply by his argument that increasing the amount in the closing statement would have been obligatory if the correct amount had been known. This is misleading and the court properly sustained the objection.

 Counsel are permitted a wide latitude in discussing the facts and arguing inferences from the evidence, even though the inferences drawn may appear to be illogical or erroneous, but they are not permitted to go beyond the issues or urge theories which the evidence does not justify. Arroyo v. Keller, Mo.App., 433 S.W.2d 584, 588[4]. Furthermore, the trial court is vested with a broad discretion in ruling on the propriety of jury arguments and determining whether prejudice has resulted. The exercise of such discretion will not be disturbed unless it is clearly abused. Eddings v. Keller, Mo., 400 S.W.2d 164, 169[6]. We do not find prejudicial error in the court's ruling.

Judgment is affirmed.

PER CURIAM:

The foregoing opinion by WEIER, C., is adopted as the opinion of this Court. Accordingly, judgment is affirmed.

DOWD and WOLFE, JJ., concur.

BRADY, P. J., not participating.