Robert Wayne DICKERSON,
Plaintiff-Respondent,

v.

ST. LOUIS SOUTHWESTERN
RAILWAY COMPANY,
Defendant-Appellant.

No. 46998.

Missouri Court of Appeals,
Eastern District,
Division One.

June 5, 1984.

Motion For Rehearing and/or Transfer to Supreme Court Denied July 12, 1984.

Application to Transfer Denied
Sept. 11, 1984.

Gerald D. Morris, Paul N. Venker, St. Louis, John J. Corrigan, Gen. Sol., San Francisco, Cal., for Southern Pacific Transportation Company.

Robert F. Ritter, Kevin M. Cushing, Paul C. Hetterman, St. Louis, for plaintiff-respondent.

SNYDER, Judge.

Plaintiff-respondent Robert Wayne Dickerson obtained a jury verdict and judgment for $1,000,000 against defendant-appellant St. Louis Southwestern Railway Company. Respondent was injured when he fell from a railroad car and landed on his buttocks and low back on the ballast rock below. He sued the railroad for his injuries pursuant to 45 U.S.C.A. Section 51 et seq., commonly known as the Federal Employer's Liability Act (FELA). The railroad appeals. The judgment is affirmed.

Appellant contends the trial court erred: (1) in overruling its objections to respondent's reference in opening statement to, and evidence of, the "blue flag rule;" (2) in

refusing to submit appellant's tendered present value instruction; (3) in denying appellant's motion for new trial because of respondent's allegedly improper argument regarding the computation of damages; (4) in submitting a modified form of MAI 8.02, the damage instruction; (5) in submitting MAI 8.02 as the damage instruction because MAI 8.02 allows the jury to speculate as to damages; (6) in submitting MAI 8.02 because MAI 8.02 deprived appellant of equal protection under the law; (7) in refusing to submit appellant's Instruction H, which would have instructed the jury not to speculate as to damages; (8) in submitting MAI 24.01 as the verdict directing instruction; (9) in denying appellant's motion for a mistrial when the jury allegedly saw respondent's wife help him up from a supine position on a courtroom bench; (10) in overruling appellant's objection to testimony about appellant's depression; (11) in overruling appellant's objection to respondent's closing argument which allegedly improperly injected the issue of punitive damages; and (12) in overruling appellant's motion for a new trial because the jury's verdict was allegedly excessive.

Respondent Robert Dickerson at the time of trial was a thirty-four year old man with a wife and two young sons. Before the accident in question, he enjoyed a normal relationship with his wife, who described her husband as a relatively happy man. In addition respondent had also enjoyed such family activities as camping, hiking, fishing, and watching his sons play baseball.

In 1972, at the age of 24, respondent began working as a railroad policeman for appellant. A railroad policeman performs basically the same function for the railroad as a municipal police officer performs for his city or county. In particular, railroad policemen inspect railroad cars for possible theft, vandalism, damage, or burglary. Appellant employed respondent at the Valley Junction railroad yard in East St. Louis, Illinois.

On December 11, 1978 at 7:35 p.m. a train known as CRBY 6014 rolled into Valley Junction. The train had two engines and one hundred cars. Respondent hopped onto the forty-third car from the rear in order to inspect its cargo of Cadillac automobiles. As he was climbing from the first, or A, level to the second, or B, level of the railroad car, he slipped and fell to the ground, landing on his back on the ballast rock below. Respondent maintains that the train moved while he was attempting to climb from one level to the next.

Respondent injured his lower back as a result of the fall. Respondent has been hospitalized several times and undergone several operations on his back since his fall, but he is nonetheless in constant pain and cannot lie down, sit or stand for extended periods of time. Respondent can no longer enjoy the outdoor activities in which he used to participate with his family, such as hiking, camping, fishing, water skiing, working around his farm and going to ball games. His personal relationship with his wife has deteriorated. Respondent, although once a happy man, is now irritable, depressed and unhappy.

In addition, respondent's evidence showed that he was totally and permanently disabled. Appellant produced the testimony of one physician who indicated that appellant could perform a sedentary job, but this physician could not name any one specific job for which respondent was suited.

Appellant also produced evidence which tended to show that respondent had injured his back before the fall from the railroad car, but respondent testified that he was in good health prior to the accident and shortly before his fall had completed a training course for appellant in Oakland, California which involved rigorous physical exercise. He earned a grade of A in this course and graduated with honors.

Respondent predicated his theory that appellant negligently failed to provide reasonably safe conditions or methods of work on three grounds. First, appellant was negligent for failing to give railroad policemen the protection of its "blue flag" rule. According to the evidence, whenever a workman is working on a train, he places a

blue flag or signal at each end of the train and removes it when he is finished. The train may not move until the blue flag is removed and only the workman who put the blue flag down may remove it. The blue flag rule did not apply to railroad policemen because, according to the railroad, requiring the policemen to put down a blue flag would hamper their ability to apprehend thieves and vandals on the trains.

Second, respondent alleged that appellant was negligent in forbidding radio communications between the train crew and the railroad policemen. Respondent testified that, although he was equipped with a radio so that he could listen to transmissions between the railyard operator and the conductor and engineer, the railroad forbade him to notify the conductor or engineer that he was on the train. Appellant produced testimony that, although communication between railroad police officers and the train's crew was not required, there was no rule forbidding such communication.

Third, respondent maintained that there was insufficient clearance between the treads of the ladder which led from one level of the railroad car to the next and the side of the car. The clearance was between two and two and a half inches wide and according to respondent did not provide enough toe room for a worker climbing the ladder. Appellant relied on the federal government's minimum standards, which the steps met, as evidence of no negligence.

After hearing the evidence, the jury awarded respondent $1,000,000.

Appellant first contends that the trial court erred in allowing evidence regarding the blue flag rule because respondent did not plead the blue flag rule as a theory of recovery, thereby surprising appellant at trial. The contention has no merit.

■ Respondent's first amended petition alleges that appellant "failed to provide reasonably safe methods of work." The pattern instruction for FELA cases, MAI 24.01, sets forth the employer's failure to provide reasonably safe methods of work as one dereliction from which the jury may infer the employer's negligence. Thus, respondent pleaded the ultimate fact in issue and the pleading thus states one basis for liability. See *Fish v. Fish*, 307 S.W.2d 46, 51 (Mo.App.1957). That appellant did not give its policemen the protection of the blue flag rule is arguably a failure to provide a reasonably safe method of work.

Although respondent pleaded an ultimate fact, the allegation is a broad generalization. Appellant could have learned more detailed facts by filing a motion for a more definite statement. As a matter of fact, the railroad itself pleaded as an affirmative defense that "Plaintiff inspected the cars of the train without being certain that the train was blue flagged."

The legal file contains a minute entry indicating that appellant filed a motion for more definite statement which was overruled; neither the motion nor the trial court's ruling, however, has been made a part of the record on appeal. Nor has appellant contended the trial court erred in overruling the motion.

■ This court is confined to the record as presented to it, see *Williams v. Clean Coverall Supply Co., Inc.*, 613 S.W.2d 659, 664[10] (Mo.App.1980), and will not speculate as to the contents of motions not filed as part of the record. Any contention, if there ever was one, that appellant was entitled to a more definite statement, has been waived. See *State ex rel. State Highway Commission v. City of St. Louis*, 575 S.W.2d 712, 724[17, 18] (Mo.App.1978). Any indefiniteness in the amended petition was cured by the jury's verdict. See *Moschale v. Mock*, 591 S.W.2d 415, 418[4, 5] (Mo.App.1979).

■ Appellant next asserts the trial court erred in refusing to submit to the jury a present value instruction.[1] The Mis-

---

1. INSTRUCTION NO. G
   If you find in favor of Plaintiff and decide to make an award for any loss of earnings in the

future, you must take into account the fact that the money awarded by you is being received all at one time instead of over a period of time

souri Supreme Court has held that "... a present value instruction was not appropriate under MAI." *Bair v. St. Louis—Francisco Ry. Co.*, 647 S.W.2d 507, 510[2] (Mo. banc 1983); but cf. *Chesapeake & Ohio Railway Co. v. Kelly*, 241 U.S. ·485, 36 S.Ct. 630, 60 L.Ed. 1117 (1916) (on writ of error to the Court of Appeals of Kentucky, the U.S. Supreme Court reversed and remanded the case because of the trial court's refusal to give a requested present value instruction). The point is denied.

■ Appellant's third contention is that the trial court erred in denying appellant a new trial when respondent's counsel argued to the jury that respondent's future wage loss could be calculated by increasing respondent's salary by 5% per year and by multiplying respondent's annual salary by the number of his employable years. After the remarks by respondent's counsel, appellant's counsel objected. The objections were sustained. No further relief was requested. This court will not fault the trial court for failing to sua sponte grant a mistrial. See *Griffith v. St. Louis—San Francisco R. Co.*, 559 S.W.2d 278, 281[5] (Mo.App.1977). The third point is denied.

Appellant's fourth point relied on is that the trial court erred in submitting the damage instruction, Instruction No. 9, which was MAI 8.02 modified.[2] Appellant argues that the instruction is inapplicable here because the evidence did not disclose a dispute between the parties about which one of several events actually caused respondent's injury and because the instruction assumes that respondent indeed fell on December 11, 1978.

■ Appellant adduced evidence which tended to show that respondent's injury was caused to some extent by accidents other than the fall on December 11, 1978. Where there is a dispute in the evidence as to which of more than one event caused the plaintiff's injury, then MAI 8.02 should be modified to confine the jury's consideration of damages to the event asserted by the plaintiff as the basis for the defendant's liability. See *Russell v. Terminal Railroad Ass'n. of St. Louis*, 501 S.W.2d 843, 847[2] (Mo. banc 1973); MAI 8.02, Notes on Use, Note 2.

■ Appellant's argument that the damage instruction erroneously assumes that respondent fell on December 11, 1978, is also unpersuasive. To hold that the modification of MAI 8.02 assumes a fact in issue would be tantamount to holding that the Notes on Use to that instruction were inapplicable and erroneous, because Note on Use 2 requires the specification of the date of the incident for which the railroad is responsible in all cases where more than one event is claimed to be the cause of the claimant's injury. The Notes on Use to the MAI must be followed where applicable. *Weinbauer v. Berberich*, 610 S.W.2d 674, 680[11] (Mo.App.1980). The point is not well taken.

■ Appellant's fifth point contends the trial court erred in giving the jury Instruction 9 because the instruction allows the jury to speculate as to damages. Instruction 9 is an approved MAI instruction. This court is powerless to declare the submission of an applicable MAI instruction erroneous. Rule 70.02(b). Appellant's fifth point is denied.

extending into the future and that Plaintiff will have the use of this money in a lump sum. You must, therefore, determine the present value or present worth of the money which you award for such future loss.

2.　　　　　INSTRUCTION No. 9

If you find the issues in favor of plaintiff, then you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe he sustained and is

reasonably certain to sustain in the future as a result of the fall on December 11, 1978 mentioned in the evidence. Any award you make is not subject to income tax.

If you find plaintiff contributorily negligent as submitted in Instruction Number 8, then you must diminish the sum in proportion to the amount of the negligence attributable to plaintiff.

■ Appellant argues next that the submission of MAI 8.02 deprives it of equal protection of the laws as guaranteed by the federal and state constitutions because wrongful death FELA defendants get the benefit of having the jury consider only pain and suffering *directly* resulting from the injuries of the decedent, MAI 8.01, whereas personal injury FELA defendants do not get the benefit of the word directly. The instruction is the applicable MAI instruction. "This instruction [MAI 8.02] is mandatory to the exclusion of all others under the MAI." *Bair v. St. Louis—San Francisco Ry. Co.*, 647 S.W.2d 507, 510[3] (Mo. banc 1983). Point six is denied. Rule 70.02(b).

■ The seventh point is that the trial court erred in refusing to give the jury a speculative damage instruction.[3] The instruction is not in MAI. The Missouri Supreme Court has held that a non-MAI speculative damage instruction should not be given. *Bair v. St. Louis—San Francisco Ry. Co.*, 647 S.W.2d at 510[4]. Point seven is denied.

■ In its eighth point, appellant alleges trial court error in the giving of Instruction 6,[4] because the instruction gives the jury a roving commission, i.e., the verdict director does not focus the jury's attention on any particular act or acts of negligence. The verdict director is the applicable instruction, MAI 24.01. Its use in the present case was mandatory. Rule 70.-02(b). Moreover, the Missouri Supreme Court has rejected the "roving commission" argument. *Dunn v. St. Louis—San Francisco Ry. Co.*, 621 S.W.2d 245, 254–255 (Mo. banc 1981). Point eight is also denied.

Appellant next argues that the trial court erred in denying appellant's motion for a mistrial when the jury saw respondent's wife helping him up from a supine position on a courtroom bench. The point is denied for two reasons.

First, the record is devoid of any indication that the jury actually saw the incident of which appellant complains, other than the bare statement of appellant's trial counsel.

■ Second, whether to grant a mistrial is a matter within the sound discretion of the trial court. *Hoene v. Associated Dry Goods Corp.*, 487 S.W.2d 479, 485[11] (Mo. 1972). Here, no abuse of discretion has been shown.

■ The trial court was in a better position than this court to observe the effect which the alleged incident had on the jury, even assuming that it took place. Moreover, the jury had already been told during testimony that respondent needed to lie down on occasion in order to relieve the pain in his back. This court has read *Fitzpatrick v. St. Louis-San Francisco Railway Company*, 327 S.W.2d 801 (Mo. 1959), upon which appellant relies, and determines that the case is distinguishable on its facts. Point nine is denied.

Appellant next maintains that the trial court erred in overruling appellant's objections to testimony by respondent and his wife concerning respondent's depression.

Respondent testified that he was depressed because he could no longer play with his children, because his wife had to work to support the family and because he had heard that he was permanently disabled. There was also testimony that re-

---

3.             INSTRUCTION No. H

You are not permitted to award the Plaintiff speculative damages by which term is meant compensation for future detriment which, although possible, is remote, conjectural or speculative. You can only award for future detriment if a preponderance of the evidence shows such a degree of probability of that detriment occurring as amounts to a reasonable certainty that it will result from the original injury in question.

4.             INSTRUCTION No. 6

Your verdict must be for plaintiff if you believe:
First, defendant either failed to provide:
   reasonably safe conditions for work, or
   reasonably safe methods of work, and
Second, defendant in any one or more of the respects submitted in Paragraph First was negligent, and
Third, such negligence resulted in whole or in part in injury to plaintiff.

spondent feels depressed because he can no longer work on his farm and because he no longer has a normal relationship with his wife.

Appellant argues that this testimony is irrelevant because it related to the wife's loss of consortium, which is not compensable under FELA, and is too remote from damages properly recoverable for pain and suffering.

The parties agree that loss of consortium may not be recovered in an FELA action. Respondent, however, maintains that the testimony of which appellant complains is relevant to establish his pain and suffering from the December 11, 1978 fall.

The first issue is whether an FELA personal injury claimant may recover damages for emotional or mental after affects of an injury otherwise compensable under FELA. In *Adams v. Atchison, Topeka and Santa Fe Ry. Co.*, 280 S.W.2d 84, 94 (Mo.1955), the court, in an FELA case, approved an instruction which permitted the jury to consider "such physical pain and mental suffering" as it found the plaintiff would endure in the future. Although the instruction was not challenged on the ground that mental suffering was not compensable and the court accordingly did not address the issue under consideration here, the fact that the instruction was approved may be taken as implicit permission to recover damages for mental suffering. At the very least, *Adams v. Atchison, T. & S.F. Ry. Co.*, does not support the idea that mental anguish is not compensable.

Federal case law expressly approves the recovery of damages for mental suffering in an FELA case. In *Hayes v. New York Central Railroad Co.*, 311 F.2d 198 (2d Cir.1962) the court discussed the issue of whether the plaintiff, a frostbite victim who had to have his feet amputated, could recover damages for emotional distress. The court held that "... the jury could ... consider in its computation of damages the fear and anxiety which plaintiff experienced in knowing of the ever-present threat of amputation." 311 F.2d at 201[5, 6].

The trial court in *Igsett v. Seaboard Coast Line Railroad Co.*, 332 F.Supp. 1127 (D.S.C.1971) expressly awarded the FELA plaintiff damages for mental suffering:

In addition to his physical pain and suffering he has suffered mental anguish, and anxiety, the shame of being transposed from an able-bodied, self-respecting working man to a pitiable, legless dependent, disfigurement, loss of sex life, humiliation and emotional strains attendant to such a deplorable condition, which would entitle him, if living, to compensation for his loss of happiness, normal life and composure. This court feels it appropriate that the award for the disability per se should include the non-pecuniary, non-pain aspects of the disabled condition, such as deprivation of a normal, full life and a chance to pursue non-economic hobbies or recreation. The court feels that an award of Fifteen Thousand ($15,000.00) Dollars is a fair and adequate amount as compensatory damages therefor.

332 F.Supp. at 1143[18].

■ Damages for mental suffering are recoverable in an FELA action. The next question is whether appellant adduced sufficient evidence to justify a finding by the jury that appellant's depression was caused by the December 11, 1978 fall. An FELA claimant can recover damages for mental distress only where there is competent evidence that the mental distress is attributable to the accident in question. See *Bullard v. Central Vermont Ry.*, 565 F.2d 193, 197[3] (1st Cir.1977).

■ Medical testimony supports respondent's claim that his mental depression was caused by the December 11, 1978 accident. Dr. Michael Murphy, who treated respondent and testified by deposition, stated that he referred respondent to a psychiatrist because respondent was depressed and because the doctor wanted to keep respondent off narcotics. The doctor then gave his opinion on the cause of respondent's depression. "He's depressed because of his pain and his inability to work and support his family."

Dr. Robert E. Schultz, Dr. Murphy's partner and another physician who treated respondent, opined that respondent was depressed because of chronic pain and his inability to work and support his family. The physician employed by appellant admitted that respondent's chronic pain, plus his inability to engage in the "normal things in life" could contribute to his depression. Point ten is denied.

Appellant next argues that the trial court erroneously overruled appellant's objection to respondent's closing argument because the argument allegedly improperly injected punitive damages into the case. Point eleven is not well taken.

■ Appellant asserts that the error occurred during the following portions of respondent's closing argument:

[MR. RITTER]

And what you do here today when you bring that verdict form back down to the judge and he reads it is going to be heard by the railroad all of the way out to San Francisco.

[MR. MORRIS]

Object to this argument, Your Honor. This is a punitive damage—that is an argument about punitive [damages] and I object to it.

[THE COURT]

No. Overruled.

[MR. RITTER]

It is going to be heard by this railroad all of the way out to the home office in San Francisco, and I ask you to make it for an amount that's proven by the evidence that we've talked about that they'll hear about loud and clear for all times.

\* \* \* \* \* \*

But I ask you to make it as generous as you possibly can and let them know when you come back down here, "Mr. Railroad, we have done our job. Here is the price tag."

\* \* \* \* \* \*

"... [T]he trial court is vested with a broad discretion in ruling on the propriety of jury arguments and determining whether prejudice has resulted." *S.G. Payne &*

*Co. v. Nowak*, 465 S.W.2d 17, 20[5, 6] (Mo. App.1971). No abuse of discretion occurred. The argument does not expressly request the jury to punish appellant. Moreover, appellant expressly limited his request for damages to an amount proven by the evidence.

Appellant relies on *Smith v. Courter*, 531 S.W.2d 743 (Mo. banc 1976) where the court held that the plaintiff's closing argument improperly injected the issue of punitive damages. Although respondent walked dangerously close to the precipice of reversible error, he managed not to fall off the cliff. In *Smith v. Courter*, the plaintiff expressly referred to the deterrent effect which the verdict might have on others. 513 S.W.2d at 745. Here, respondent limited his arguments to appellant whose corporate headquarters are in San Francisco.

Moreover, in *Smith v. Courter*, the court acknowledges that on a cold record, it might be debatable whether the plaintiff was injecting the question of punitive damages. 531 S.W.2d at 746. Because the trial court had viewed the plaintiff's argument as exhorting the jury to consider deterrence as a factor, the reviewing court deferred to its determination. 531 S.W.2d at 747. Conversely, while it may be debatable whether plaintiff here made an improper plea for punitive damages, the trial court determined that the argument was not objectionable, and this court cannot say that the trial court abused its discretion in making that determination.

■ In its last point relied on appellant contends that the verdict was grossly excessive. This court has reviewed the record and determined that the evidence of respondent's lost wages, medical expenses, and pain and suffering adequately support the $1,000,000 verdict.

The judgment is affirmed.

KELLY, P.J., and STEWART, J., concur.