Michael Scott GOEDEL, Plaintiff–Appellant,

and

Leigh Portland Goedel; the Ohio River Company, Plaintiffs,

v.

NORFOLK & WESTERN RAILWAY COMPANY, a corporation, Defendant–Appellee.

The OHIO RIVER COMPANY, Plaintiff–Appellant,

and

Michael Scott Goedel; Leigh Portland Goedel, Plaintiffs,

v.

NORFOLK & WESTERN RAILWAY COMPANY, a corporation, Defendant–Appellee.

Nos. 93–1451, 93–1545.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 25, 1993.

Decided Jan. 6, 1994.

---

John Harlow Bicknell, Greene, Ketchum, Bailey & Tweel, Huntington, WV, argued, for plaintiff-appellant.

Fred Adkins, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, WV, argued (James Wade Turner, on brief), for defendant-appellee.

Todd M. Powers, Felix J. Gora, Rendigs, Fry, Kiely & Dennis, Covington, KY, on brief, for plaintiff-appellant Ohio River Co.

Before NIEMEYER, Circuit Judge, CHAPMAN, Senior Circuit Judge, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

## OPINION

CHAPMAN, Senior Circuit Judge:

Michael Scott Goedel challenges a district court's order of judgment as a matter of law pursuant to F.R.C.P. 50(a)(1) [1] for Norfolk & Western Railway Company on Goedel's claim that he was injured as a result of the company's negligent use of defective equipment. We agree that there was but one reasonable conclusion and we affirm.

### I.

Michael Goedel was employed by the Ohio River Company ("ORCO") at its coal loading facility in Kenova, West Virginia. As of October 1990, Goedel had been employed at ORCO for nine months. For the last three of those months he had been working in the

---

1. The rule, in pertinent part, provides:

If during a trial by jury a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against that party on any claim ... that cannot under the controlling law be maintained without a favorable finding on that issue.

Fed.R.Civ.P. 50(a)(1).

capacity of brakeman. As a brakeman, it was his job to couple and uncouple loaded 100 ton coal hopper rail cars.

Each rail car has a coupling mechanism located on each end which allows cars to be connected with other cars. The standard coupling mechanism consists of a knuckle attached to a drawbar. The drawbar is in turn attached to the rail car. The knuckle is a clamp which can be opened and closed as required and is designed to couple automatically with another knuckle on impact when the couplers are properly aligned. The drawbar has several inches of lateral play so that the rail cars can negotiate turns without derailing. However, because of the lateral play, the knuckles occasionally become misaligned and may fail to couple automatically upon impact. No device has been developed for wide-spread use that would automatically align the drawbars.

On October 26, 1990, Goedel and Brian Lester, another ORCO employee, were responsible for moving rail cars carrying coal to an unloading area. They were transporting three cars, owned by The Southern Railroad Company ("Southern"), to another track to couple with thirteen stationary cars, owned by Norfolk & Western Railway Company ("N & W"). When the two groups of rail cars were approximately three car lengths apart, Goedel stepped off the moving car and began to walk toward the stationary cars. Goedel had a handheld radio which enabled him to maintain communication with Lester, who was operating the moving cars. As the moving cars approached the stationary cars, Goedel noticed that the coupling mechanisms on the two adjacent cars were not aligned. In an attempt to align the coupling mechanisms, Goedel kicked the misaligned coupler on the stationary car; unfortunately, his foot was caught and crushed between the two coupling mechanisms.

When Goedel began work at ORCO, he received instruction on the correct method of coupling rail cars during a one week orientation period. He was warned that it was dangerous to attempt to align the couplers by kicking them, and he had viewed an in-

structional video, "Safe Coupling." The video instructed that rail cars should be stopped before resolving a misalignment of couplers. The video also warned that it was improper and dangerous to kick couplers into alignment.

On August 19, 1992, Goedel filed this action against N & W in the Circuit Court of Wayne County, West Virginia, alleging that N & W was strictly liable because of its violation of the Federal Safety Appliance Act, 45 U.S.C. § 2, and, in the alternative, was negligent for maintaining a rail car with a defective coupler and that N & W's negligence had proximately caused Goedel's injury. N & W properly removed the case under 28 U.S.C. § 1332 to the United States District Court for the Southern District of West Virginia.[2] On February 17, 1993, ORCO intervened as a plaintiff in the action for purposes of protecting its lien against any potential recovery by Goedel.

Trial began on March 30, 1993. At trial, Goedel admitted on cross examination that it is dangerous to align a coupler by kicking it. Goedel's own expert witness, James Gates, testified that it was the responsibility of the brakeman to ensure proper alignment before attempting to couple two cars. Goedel presented four witnesses who testified that they had examined the drawbar after the accident had occurred and found it to be "frozen" or stuck and could not be moved, even with the help of a steel rod for leverage. However, the rail cars were coupled together after the accident and later transported to another area. Dennis Dean testified that the coupler on the N & W car was positioned differently the day after the accident from where it was immediately before the accident.

At the conclusion of the plaintiffs' evidence, N & W moved for a Judgment as a Matter of Law pursuant to Rule 50 of the Federal Rules of Civil Procedure. First, the district court determined that Goedel had not presented sufficient evidence to indicate that the coupling mechanism was defective, and even if said mechanism was defective, the sole proximate cause of the accident and

---

**2.** After the case was removed, the district court dismissed Goedel's claim that N & W was strictly liable for violating the Federal Safety Appliance Act. J.A. 50.

plaintiff's injury was the negligent placing of his foot between the two couplers. The court concluded that Goedel knew the proper way to align rail car couplers and against his own better judgment and specific instruction ignored his obligation to stop the moving rail car before realigning the couplers. The court reasoned that Goedel, had he followed the procedure, could have determined any problem that he faced in coupling the cars and could have safely dealt with the situation. The court found that his injury was solely and proximately caused by his own negligence in abdicating his duty to stop the cars in situations where two couplers were misaligned, and the court granted N & W's motion for judgment as a matter of law.

## II.

A judgment as a matter of law will be upheld on appeal "if under the governing law there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In reviewing the district court's decision, this court must view the evidence in the light most favorable to the non-movant. *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 420 (4th Cir.1993).

Goedel argues that N & W's use of defective equipment violated the Federal Safety Appliance Act. That Act provides:

It shall be unlawful for any such railroad to haul or to permit to be hauled or used on its line any car not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars.

45 U.S.C. § 2 (1988). The Supreme Court has held that Section Two of the Federal Safety Appliance Act imposes absolute liability upon a railroad for injuries sustained by an employee when automatic couplers fail to perform properly. *Affolder v. New York, Chi. & St. L. R.R.*, 339 U.S. 96, 99, 70 S.Ct. 509, 510, 94 L.Ed. 683 (1950). However, the Court has also held that in cases where the plaintiff is not an employee of the defendant railroad, the plaintiff must rely solely on common law actions in tort governed by state law. *Crane v. Cedar Rapids & Iowa City Ry.*, 395 U.S. 164, 166–67, 89 S.Ct. 1706, 1708, 23 L.Ed.2d 176 (1969).

Since Goedel was not an employee of N & W, he must prove that N & W was negligent. In an effort to accomplish this, Goedel argues that the N & W coupling mechanism was frozen in a position that was out of line with the coupler of the car in front of it. This misalignment of the couplers precluded the cars from automatically coupling and required him to move between the two rail cars to align the coupling mechanisms. He contends that because the cars would not have coupled automatically, the Federal Safety Appliance Act has been violated. Goedel argues that under West Virginia law, a defendant's violation of a statute is prima facie evidence of negligence. *See Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990).

The malfunctioning and misalignment of rail car couplers has received varied treatment from the federal courts over the years. In *Metcalfe v. Atchison, Topeka and Santa Fe R.R.*, 491 F.2d 892 (10th Cir.1974), on which Goedel relies, a rail worker was forced to move between two rail cars to properly align two couplers and was killed when one of the rail cars rolled over him while he was between the cars. The worker's widow filed a Federal Employers' Liability Act (FELA) claim alleging that the Safety Appliance Act was violated. Evidence was presented at trial that one of the drawbars was misaligned. A jury determined that the defendant had violated Section Two of the Safety Appliance Act because the two cars would not have coupled automatically, as required by the Act. The Tenth Circuit allowed the jury verdict to stand, concluding that the jury was entitled to infer that the car with the misaligned drawbar would not have automatically coupled with the other car.

In *Clark v. Kentucky & Ind. Terminal R.R.*, 728 F.2d 307 (6th Cir.1984), a rail worker was injured as he attempted to couple two rail cars after they failed to couple properly on an earlier attempt. The worker filed an FELA claim alleging that the coupler was defective in violation of the Safety Appliance Act. Specifically, he alleged that because the coupler did not properly function upon im-

pact he was forced to move between the cars where he suffered his injury. Evidence was offered at trial that the couplers, which were examined after the accident, were defective because they would not lock on impact. A jury found for the rail worker but the district court, concluding that the record did not support the verdict, granted the defendant's motion for judgment notwithstanding the verdict. On appeal, the Sixth Circuit, reversed and held that the jury could have properly inferred that the couplers failed to perform automatically upon impact due to a defect in the coupler's knuckle, giving rise to the defendant's liability under the Safety Appliance Act. The court cited *Affolder v. New York, Chi. & St. L. R.R.*, 339 U.S. 96, 99, 70 S.Ct. 509, 510, 94 L.Ed. 683 (1950), where the Supreme Court found that a failure of cars to couple automatically is a violation of the Safety Appliance Act assuming "the coupler was placed in a position to operate on impact." The Sixth Circuit claimed that *Affolder* did not prevent a jury from finding a violation of the Safety Appliance Act in the absence of direct testimony on the positions of the two couplers prior to impact.

In the more recent case of *Reed v. Philadelphia, Beth. & New Eng. R.R.*, 939 F.2d 128 (3d Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 1584, 123 L.Ed.2d 151 (1993), a worker was injured after the couplers between two cars failed to function properly. After the failure to couple, the worker moved between the cars to open one of the knuckles. As he attempted to engage the cars, one of the cars moved forward, amputating part of his foot. The Third Circuit held that a mere failure of two rail cars to couple does not establish a per se violation of the Federal Safety Appliance Act. Further, the court held that if the coupling equipment is not defective, a railroad has a valid defense if it can show that the rail cars did not automatically couple because the couplers were out of alignment.

As support for this proposition, the Third Circuit cited to *United Transp. Union v. Lewis*, 711 F.2d 233 (D.C.Cir.1983), in which the court analyzed the requirements of Section Two of the Federal Safety Appliance Act and recognized that drawbars require some lateral movement,

> that the drawbar goes out of alignment with the next car due to vibration or jarring does not indicate that the coupler is "defective." To be effective the coupling apparatus must permit limited lateral movement of the drawbar in order to allow the cars, when coupled together, to pass around curves without derailment and to allow coupling on a curve. Occasionally, drawbars move so far out of alignment as to preclude automatic coupling. It then becomes necessary to adjust the drawbar or the coupling knuckle, and this may require going between the cars.

*Id.* at 235 n. 5. *See also Maldonado v. Missouri Pacific R.R. Co.*, 798 F.2d 764, 768 (5th Cir.1986) ("[D]rawbar misalignment should be a defense to failure to couple in instances where the misalignment which causes the noncoupling does not reflect defective or failed equipment."), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 762 (1987).

### III.

■ We first address the question of whether the Federal Safety Appliance Act has been violated by N & W's use of defective equipment. No evidence was proffered at trial indicating that the knuckle of N & W's coupling mechanism was defective. In fact, Goedel testified that the knuckle on the Southern car was open and the cars would have coupled had the knuckles been aligned properly, but he argues that the drawbar on N & W's car was frozen and was incapable of being aligned properly. However, his position is not supported by the evidence which reflects that the car with the allegedly frozen drawbar was later coupled to another car. While the drawbar may have been difficult to move, the fact that the N & W car was coupled and transported after the accident demonstrates that the drawbar was not absolutely frozen. The district court determined that the N & W coupling mechanism, the drawbar and the knuckle together, was not defective and after reviewing the record in the light most favorable to Goedel, we agree with the district court and conclude that

there was no violation of the Safety Appliance Act because there was no proof of defective coupling equipment.

## IV.

■ On a related issue, and one of first impression for this circuit, we answer the question of whether two misaligned couplers which, absent a defect, fail to couple automatically is a violation of the Federal Safety Appliance Act. We are persuaded by the reasoning used by the District of Columbia and Third Circuits that a simple misalignment of couplers is not a violation of the Act.

First, although the Safety Appliance Act requires that all coupling mechanisms perform automatically, we perceive this requirement to mean that the coupling knuckles must couple automatically once they are properly in the "mating" position. The Safety Appliance Act was enacted by Congress in an effort to reduce injuries that were occurring as the railroad workers were standing between rail cars during the coupling process. S.Rep. No. 1049, 52d Cong., 1st Sess. 1 (1892). To achieve its goal, Congress required that all coupling equipment be compatible and perfectly interchangeable. *Id.* at 6. Without a requirement that the knuckles perform automatically, workmen would be between rail cars every time two cars were to be joined. As it is, with perfectly functioning knuckles, workmen must only occasionally move between the cars to cure problems of misalignment and this should be done while the cars are stationary. Usually the coupling mechanisms, because they do not have much of a lateral swing, will be aligned properly and couple automatically without a worker moving between the cars. We believe the Safety Appliance Act was created to reduce the risks associated with coupling rail cars and not to require that drawbars be aligned perfectly at all times.

Second, the coupling mechanisms, the knuckles and the drawbars, are designed to move laterally so that the train can negotiate turns without derailing. The lateral play also allows rail cars to be coupled when the cars are located on a curved track. The necessity to keep the trains on the tracks and to allow cars to couple on curved sections of track demands that drawbars have some lateral movement. Because the drawbars typically need four to six inches of lateral play, it is inevitable that the coupler mechanisms will be occasionally misaligned. In the event of misalignment, the problem can be solved easily by stopping the rail cars when they are several feet apart and then properly aligning the coupling mechanisms so that they will couple automatically upon impact. Goedel has cited to *Metcalfe v. Atchison, Topeka and Santa Fe R.R., supra,* where the Tenth Circuit allowed recovery due to a simple misalignment. Should this court find, as the Tenth Circuit has, that when two misaligned couplers, absent a defect, fail to couple is a violation of the Safety Appliance Act, we would ignore the practical requirement that drawbars move laterally so that trains may move smoothly without derailing.

We hold that a misaligned coupler, absent a defect in the mechanism, is not a violation of Section Two of the Safety Appliance Act.

There being no defect in either the knuckle or the drawbar or due to misalignment, there was no violation of the Act and therefore no prima facie presumption of negligence. Since Goedel has alleged that the violation of the Safety Appliance Act was the sole basis for N & W's negligence, it is unnecessary for us to address the question of whether Goedel's own act was the sole proximate cause of his injury. Therefore the district court's grant of judgment as a matter of law to N & W is

*AFFIRMED.*