**Gordon Ray SMITH, Plaintiff,**

v.

**ABERDEEN, CAROLINA AND WESTERN RAILWAY COMPANY, Defendant.**

**No. 3:93–CV–34P.**

United States District Court, W.D. North Carolina, Charlotte Division.

June 15, 1994.

---

Harvey L. Cosper, Jr., Golding, Meekins, Holden, Cosper & Stiles, Charlotte, NC, C. Michael Hardman, Jones & Garnger, Atlanta, GA, for plaintiff.

Frank J. Gordon, Maupin, Taylor, Ellis & Adams, John C. Millberg, Millberg & Gordon, Raleigh, NC, Lee A. Spinks, Poyner & Spruill, Charlotte, NC, for defendant.

## MEMORANDUM OF DECISION

ROBERT D. POTTER, Senior District Judge.

**THIS MATTER** is before the Court on Defendant's motion for partial summary judgment, filed April 1, 1994. Plaintiff responded to the motion in a brief filed May 6, 1994. Defendant replied in a brief filed May 23, 1994.

The Court has carefully reviewed the instant motions, the briefs, exhibits and relevant legal authorities. Based upon this review, the Court believes the Defendant's Motion should be granted.

### FACTUAL SUMMARY

Gordon Ray Smith was a brakeman employed by Defendant. On May 6, 1992, Mr. Smith was guiding a locomotive engine in a maneuver in the parlance of the railroads known as "coupling." Coupling involves manually joining two railcars by using an engine to push one into another to trigger a mechanism on both known as a coupler. A coupler consists of a knuckle which is attached to a drawbar which in turn is affixed to the railcar. Couplers work in clamp like fashion so that when the drawbars are properly aligned and the couplers are forcibly joined together, the knuckles interconnect and close automatically onto each other connecting the railcars. Before coupling can occur properly, the drawbars must be aligned properly. When out of alignment, drawbars must be properly adjusted by a railway employee going in between the cars and manually aligning the drawbars.

On May 6, 1992, Mr. Smith guided Mr. Carver, who was operating the engine, by hand-held radio in coupling log racks already attached to the engine to thirteen unattached cars loaded with wood chips. Smith informed Carver about the distance between the log racks that were being pushed by the engine and the chip cars. When the log racks were approximately half a car away

from the chip cars, Smith observed the coupler on the first chip car was misaligned. Without telling Carver to stop, Smith kicked the coupler on the chip car hoping to align it before the log racks and the chip car collided. Although Mr. Smith's kick moved the coupler four or five inches, his foot did not escape the collision and was amputated between the converging couplers. The cars did couple on impact, albeit with the Plaintiff's foot caught in the coupler. The coupling occurred the first time the train crew tried to couple them. (Smith Depo. p. 61, 1. 14–20). Smith further testified on page 74 of his deposition, lines 16–25 and page 75, lines 1–3, that it would be normal when having to align a drawbar to have to adjust it three to five inches, that when Smith attempted to move the coupler by kicking it, that it did move four to five inches and that he did not have any difficulty moving it.

### SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides:

> ... judgment ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c) (West 1993).

Summary judgment must be granted when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id., Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). To attain summary judgment, the movant bears an initial burden of demonstrating no genuine issues of material fact are present. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party who must point out specific facts which create disputed factual issues. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In evaluating a summary judgment motion, district courts must consider the evidence in the light most favor-

able to the non-moving party and draw all reasonable inferences from those facts in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds could recognize as real factual disputes." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence from the entire record could not lead a rational fact finder to rule for the non-moving party. *Matsushita Electric Industrial Co.*, 475 U.S. at 587, 106 S.Ct. at 1356; *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552, 91 L.Ed.2d 265 (1986).

## *ANALYSIS*

Defendant moves the Court to grant partial summary judgment as to Count Two of Plaintiff's complaint. Count Two of the complaint states a claim under the Federal Employers' Liability Act (FELA) premised upon a violation of the Federal Safety Appliance Act (FSAA). The FSAA, 45 U.S.C. § 2, mandates carriers maintain certain equipment, including railcar coupling mechanisms, in proper condition. Plaintiff claims the FSAA was violated because the coupler Mr. Smith kicked was defective within the meaning of the FSAA, and therefore, the FELA has been violated.

Defendant claims partial summary judgment is warranted on Count Two by virtue of *Goedel v. Norfolk & Western Railway, Co.*, 13 F.3d 807 (4th Cir.1994) in which the Fourth Circuit held, "a misaligned coupler,

absent a defect in the mechanism, is not a violation of Section Two of the Safety Appliance Act." *Id.* at 812. Plaintiff contends the coupler in this action was defective, *Goedel* does not apply to this case since Goedel was not an employee of the railroad and therefore had to prove that Norfolk & Western Railway was negligent, and that summary judgment is inappropriate because there is a material dispute of fact concerning the defectiveness of the coupler.

Plaintiff contends couplers typically misalign only when railcars are uncoupled on a curve. In this case, the railcars were each uncoupled on a segment of straight track. Consequently, Plaintiff contends the circumstantial evidence indicates that but for a defect in the coupler in this case, there would have been no misalignment. Specifically, the Plaintiff believes the misaligned coupler in this case became improperly aligned because of excessive wear. Contrarily, Defendant claims eyewitnesses attest that the coupler was not defective.

The Plaintiff cites *Reed v. Philadelphia, Beth. and New Eng. R.R.*, 939 F.2d 128 (3rd Cir.1991) *cert. denied*, — U.S. —, 113 S.Ct. 1584, 123 L.Ed.2d 151 (1993), for the theory that it is a question of fact for the jury to determine whether the amount of lateral play in a particular drawhead is the result of a defect.

The facts in *Reed* were entirely different than in the case before this Court. In *Reed* a scrap car and a boxcar impacted but failed to couple. The brakeman went between the chip cars and found that the knuckles on both couplers were closed. He opened the knuckles on the boxcar with the lever on the outer edge of the boxcar. He tried to do the same with the scrap car, but the lever would not function, so he went between the cars to open the knuckle and the scrap car lurched forward amputating part of his foot. Thus in *Reed* the cars did not couple and the equipment to open the knuckle did not function. In the case at bar, the cars did couple. There is no evidence by the Plaintiff in this case that they would not have coupled even if he had not tried to align the drawbar on the chip car.

In *Clark v. Kentucky and Indiana Terminal R.R.*, 728 F.2d 307 (6th Cir.1984) cited by the Plaintiff, the plaintiff, a switchman helper, developed a hernia attempting to center a coupler on a car which had not coupled and was found to have defects and parts were replaced.

In *Kansas City Southern Ry. Co. v. Cagle*, 229 F.2d 12 (10th Cir.1955) *cert. denied*, 351 U.S. 908, 76 S.Ct. 697, 100 L.Ed. 1443 (1956) a misaligned drawbar prevented automatic coupling, as was the case in *Buskirk v. Burlington Northern Inc.*, 103 Ill.App.3d 414, 59 Ill.Dec. 125, 127, 431 N.E.2d 410, 412, *cert. denied*, 459 U.S. 910, 103 S.Ct. 217, 74 L.Ed.2d 173 (1982).

The Plaintiff in "Plaintiff's Opposition", p. 8, speculates that the drawbar in question "may have been worn"; that a car "may have a misaligned drawbar if the car was uncoupled in a curve or if the knuckle was loose or worn." This speculation is based on the affidavit of Gaven McRee Poplin.

The statement on p. 8 of the "Plaintiff's Opposition" that "... the drawbar should have remained aligned unless the drawbar was worn and defective" is based on an affidavit of Charles E. Hatch who apparently is retired and lives in Florida. He does not state he saw the drawbar in this case.

The statute involved in this case is the Safety Appliance Act, 45 U.S.C.A. Sec. 2 which provides:

§ 2. **Automatic couplers**

It shall be unlawful for any railroad to haul or permit to be hauled or used on its line any car not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars.

The testimony of the Plaintiff at his deposition was that when the log cars impacted the chip cars the log cars coupled the first time the crew tried to couple the cars. (Smith depo. p. 61, 1. 14–20).

In *United Transportation Union v. Lewis*, 711 F.2d 233, 235 n. 5 (D.C.Cir.1983) the court said:

That the knuckle on the coupler closes or that the drawbar goes out of alignment with the next car due to vibration or jarring does not indicate that the coupler is "defective." To be effective the coupling apparatus must permit limited lateral movement of the drawbar in order to allow the cars, when coupled together, to pass around curves without derailment and to allow coupling on a curve. Occasionally, drawbars move so far out of alignment as to preclude automatic coupling. It then becomes necessary to adjust the drawbar or the coupling knuckle, and this may require going between the cars. *Metcalfe v. Atchison, Topeka & Santa Fe Ry.*, 491 F.2d 892, 896 (10th Cir.1974). After 90 years' automatic realigning devices, as opposed to automatic coupling devices, are still in the experimental stage and have been installed on less than one percent of railroad cars. *Id.* at 896 n. 2.

In *Affolder v. New York Chicago & St. Louis Railroad Co.*, 339 U.S. 96, 99, 70 S.Ct. 509, 511, 94 L.Ed. 683 (1950) the Supreme Court said:

Further, we said, "a failure of equipment to perform as required by the Safety Appliance Act is in itself an actionable wrong...."

*Of course this assumes that the coupler was placed in a position to operate on impact.* (Emphasis added).

In *Reed v. Philadelphia, Bethlehem & New England R.R.* at p. 132, the Third Circuit said:

We think the rationale of *Affolder*, which allows a defense of closed knuckles, applies equally to a situation where non-defective equipment is misaligned. In both instances, the causative factor which prevents the coupling may result from jarring or vibration of the car while moving, or from human error in failing to open the knuckle or align the drawbar. In these situations, the failure to couple might not be caused by defective equipment and consequently is not a violation of the Safety Appliance Act.

Finally, and most importantly the Fourth Circuit in *Goedel v. Norfolk & Western Ry. Co.* at p. 812 held:

On a related issue, and one of first impression for this circuit, we answer the

question of whether two misaligned couplers which, absent a defect, fail to couple automatically is a violation of the Federal Safety Appliance Act. We are persuaded by the reasoning used by the District of Columbia and Third Circuits that a simple misalignment of couplers is not a violation of the Act.

First, although the Safety Appliance Act requires that all coupling mechanisms perform automatically, we perceive this requirement to mean that the coupling knuckles must couple automatically once they are properly in the "mating" position. The Safety Appliance Act was enacted by Congress in an effort to reduce injuries that were occurring as the railroad workers were standing between rail cars during the coupling process. S.Rep. No. 1049, 52d Cong., 1st Sess. 1 (1892). To achieve its goal, Congress required that all coupling equipment be compatible and perfectly interchangeable. *Id.* at 6. Without a requirement that the knuckles perform automatically, workmen would be between rail cars every time two cars were to be joined. As it is, with perfectly functioning knuckles, workmen must only occasionally move between the cars to cure problems of misalignment and this should be done while the cars are stationary. Usually the coupling mechanisms, because they do not have much of a lateral swing, will be aligned properly and couple automatically without a worker moving between the cars. We believe the Safety Appliance Act was created to reduce the risks associated with coupling rail cars and not to require that drawbars be aligned perfectly at all times.

Second, the coupling mechanisms, the knuckles and the drawbars, are designed to move laterally so that the train can negotiate turns without derailing. The lateral play also allows rail cars to be coupled when the cars are located on a curved track. The necessity to keep the trains on the tracks and to allow cars to couple on curved sections of track demands that the drawbars have some lateral movement. Because the drawbars typically need four to six inches of lateral play, it is inevitable that the coupler mechanisms will be occasionally misaligned. In the event of misalignment, the problem can be solved easily by stopping the rail cars when they are several feet apart and then properly aligning the coupling mechanisms so that they will couple automatically upon impact. Goedel has cited to *Metcalfe v. Atchison, Topeka, and Santa Fe Ry., supra,* where the Tenth Circuit allowed recovery due to a simple misalignment. Should this court find, as the Tenth Circuit has, that when two misaligned couplers, absent a defect, fail to couple is a violation of the Safety Appliance Act, we would ignore the practical requirement that drawbars move laterally so that trains may move smoothly without derailing.

*We hold that a misaligned coupler, absent a defect in the mechanism, is not a violation of Section Two of the Safety Appliance Act.* (Emphasis added).

The undisputed facts in the case at bar are that:

1. Plaintiff was employed by the Defendant, as a brakeman.

2. One of a brakeman's duties is to couple and uncouple cars. (Plaintiff's Depo. p. 21, 1. 19).

3. At the time of the accident the Plaintiff was engaged in his duty of guiding, by hand held radio, the engineer who was operating the engine in coupling log racks, already attached to the engine, to thirteen unattached cars loaded with wood chips.

4. Plaintiff informed the engineer about the distance between the log racks that were being pushed by the engine, and the chip cars.

5. When the log cars were approximately one half a car length from the chip cars, without telling the engineer to stop pushing the log cars, Smith attempted to push the drawbar on the locked chip car with his left foot to shove it over because it was "four or five inches out of line." (Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment filed May 6, 1994 p. 3).

6. The chip cars and the log cars coupled automatically the first time on impact albeit with Plaintiff's foot caught in the

coupler. (Plaintiff's Depo. p. 61, l. 14–20).

7. The Plaintiff stated that he learned three months or so before this accident that part of a job of a railroad brakeman was to align couplers from time to time. (Plaintiff's Depo. p. 32, l. 20–24).

8. Plaintiff also testified at his deposition that there was nothing unusual about having to align a coupler from time to time. (Plaintiff's Depo. p. 33, l. 2–5).

9. Plaintiff testified it would be normal to adjust a drawbar three to five inches and that the coupler did move in this case and he had no undue difficulty in moving it. (Plaintiff's Depo. p. 74, L. 16–25; p. 75, l. 1–3).

10. The Defendant's evidence was that there was nothing defective about either car. (Feichtenbiner Affidavit ¶ 10).

This is a case involving the construction of a statute enacted by Congress, and admittedly anachronistic in these days of workers' compensation which provides for payment of medical bills and some lost wages as a result of and arising out of a worker's duties.

However, to provide coverage for rail workers in the form of workers' compensation is the duty of Congress not this Court. Working on a railroad is a dangerous occupation, although not as dangerous as in the early days of link and pin coupling, steam locomotive explosions, collisions between trains because of lack of signals or communication by radio, as we have today.

**NOW, THEREFORE, IT IS ORDERED** that the Defendant's Motion for Partial Summary Judgment as to Count II will be ***GRANTED.***

A partial summary judgment will be filed simultaneously with this Memorandum of Decision.

### *PARTIAL SUMMARY JUDGMENT*

In accordance with the Memorandum of Decision filed simultaneously with this Judgment, the Court will grant Defendant's Motion for Partial Summary Judgment as to Count II of the Plaintiff's Complaint.

**NOW, THEREFORE, IT IS ADJUDGED** that Count II of the Plaintiff's Complaint be, and hereby is, ***DISMISSED WITH PREJUDICE.***